826 F.2d 1270
 1988 A.M.C. 277, 56 USLW 2123
 Charles E. POLETO, Appellee/Cross-Appellant,
v.
CONSOLIDATED RAIL CORPORATION, Appellant/Cross-Appellee,
v.
HAMMERMILL PAPER COMPANY
v.
A.E. STALEY MANUFACTURING CO. and the Baltimore & Ohio
Railroad Company.
 Nos. 86-5249, 86-5250.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 19, 1986.
Decided Aug. 19, 1987.
 
 Michael B. Michelson (argued) and Michael J. Rogan, Gaines & Stern Co., L.P.A., Cleveland, Ohio, Charles W. Rubendall, Wayne M. Pecht and Heath L. Allen, Keefer, Wood, Allen & Rahal, Harrisburg, Pa., for appellee/cross appellant Charles E. Poleto.
 David C. Eaton (argued) and Craig J. Staudenmaier (argued), Nauman, Smith, Shissler & Hall, Harrisburg, Pa., for appellant/cross appellee Consol. Rail Corp.
 Before HIGGINBOTHAM and BECKER, Circuit Judges, and DUMBAULD, District Judge*.OPINION OF THE COURT
 EDWARD R. BECKER, Circuit Judge.
 
 
 1
 These are cross-appeals from a personal injury judgment in favor of Charles E. Poleto, an employee of Consolidated Rail Corp. ("Conrail"), in a case involving the Federal Employer's Liability Act (FELA) accompanied by pendent state claims. The appeals present three interesting and important questions. First, should prejudgment interest be awarded in FELA cases? Second, when a district court disposes of post-verdict motions and thereupon enters judgment three months after a jury verdict, does postjudgment interest under 28 U.S.C. Sec. 1961 run from the date of the verdict or from the date of the judgment? Third, given the fact that the jury's verdict established joint tortfeasor liability against both Conrail and third-party defendant Hammermill Paper Co. ("Hammermill"), the latter having settled directly with the plaintiff prior to trial, does a change in the Pennsylvania Supreme Court's interpretation of the Uniform Contribution Among Tortfeasors Act (UCATA) after trial affect the molding of the judgment, or is the judgment unaffected because the law governing contribution is a matter of federal common law? In addition, appellant/cross-appellee Conrail raises a number of questions relating to liability and trial procedures. We identify these claims in the margin.[1]
 
 
 2
 We dispose of these questions as follows. First, although we believe that the purposes of the FELA would be furthered by allowing prejudgment interest on past economic harms when, as here, answers to special interrogatories have identified these harms, we are unwilling to depart from eighty years of consistent caselaw holding that the FELA does not permit prejudgment interest. We conclude that if prejudgment interest is to be awarded in FELA cases, it is for Congress to so decree, and we affirm the district court on this point. Second, we hold that postjudgment interest under 28 U.S.C. Sec. 1961 should be calculated from the date of the verdict and not the entry of judgment, and we reverse and remand for recalculation. Third, we conclude that Pennsylvania's post-trial reinterpretation of the UCATA controls the molding of the judgment between Conrail and Hammermill, two non-diverse parties whose only controversy sounds in state law; hence we remand to the district court for reconsideration. As for the other issues, see supra note 1, we reject Conrail's contentions and affirm on the reasoning supplied by the able district judge.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 3
 Poleto, an experienced rail car inspector employed by Conrail, was sent to the Hammermill plant in Lock Haven, Pennsylvania to repair a defective hopper car. He was injured when he fell through rotted floorboards of the platform on which the car sat.
 
 
 4
 The platform was owned and was supposed to be maintained by Hammermill, but the evidence indicated that, over the years, Conrail had assumed responsibility for inspecting it. For a number of years prior to the date of Poleto's injury, Conrail's employees had unlimited access to the area for the delivery, placement, repair and renewal of freight and freight cars. Because of this access, they regularly inspected and evaluated the premises, including the platform and platform area. Based upon their inspections, Conrail's personnel had ordered remedial action, including but not limited to repair of the platform, replacement of worn and defective materials, closing entire work areas, and placement of warning signs. Moreover, at or near the area where Poleto fell, Conrail personnel had fallen through rotten boards on two previous instances, and, only one month before Poleto's injury, Conrail had inspected the area but reported no hazard. Poleto's injury resulted from other rotten boards nearby.
 
 
 5
 Poleto initiated suit against Hammermill and Conrail. He asserted federal jurisdiction for his claim against Conrail under 28 U.S.C. Sec. 1331 (on account of the FELA); jurisdiction for the claims against Hammermill was asserted under "principles of pendent jurisdiction." Complaint at 2. Conrail crossclaimed against Hammermill for contribution and indemnity, alleging that Poleto's injuries resulted from Hammermill's negligence and that, in any event, Hammermill was contractually obligated to hold Conrail harmless.[2] Prior to trial, Poleto and Hammermill settled all claims arising from the accident for $195,000. Poleto thus proceeded at trial against Conrail alone, and Conrail presented its claims for contribution and indemnity against Hammermill.
 
 
 6
 The case was tried to a jury in bifurcated fashion. The jury found Hammermill and Conrail to be joint tortfeasors, with Hammermill 25% and Conrail 75% liable. The district court crafted exemplary special interrogatories on the damages issue,[3] and, on August 29, 1985, the jury awarded Poleto $315,000. Based on the jury's apportionment of liability, Conrail was liable for $236,250 and Hammermill for $78,750. Hammermill's payment of $195,000 in settlement thus amounted to $116,250 more than the amount for which the jury had held it liable.
 
 
 7
 Poleto moved for entry of judgment, but Conrail opposed the form of the judgment that Poleto proposed. The district court therefore entertained briefs concerning the proper molding of the judgment, and, finding the matter controlled by Pennsylvania law, it molded the verdict by awarding $116,250 in contribution in favor of Hammermill and against Conrail. The district court therefore entered judgment for Poleto and against Conrail for $120,000.[4] It also denied Poleto's motion for prejudgment interest, and held that postjudgment interest, available under 28 U.S.C. Sec. 1961, should run from the date on which the judgment was entered and not the date of the verdict, which in this case was some three months earlier. These appeals followed.
 
 II. PREJUDGMENT INTEREST
 
 8
 The district court declined to award Poleto prejudgment interest on the amount of the jury award. Poleto concedes that the great weight of authority favors the district court's position. See, e.g., Newman v. Grand Trunk Western R.R., 781 F.2d 55, 56 (6th Cir.1985); Louisiana & Arkansas Ry. v. Pratt, 142 F.2d 847, 848-49 (5th Cir.1944); Cortes v. Baltimore Insular Line, 66 F.2d 526, 529 (2d Cir.), rev'd on other grounds, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1933); Chicago, M., St.P. & P. R.R. v. Busby, 41 F.2d 617, 619 (9th Cir.1930) (citing cases); National Airlines, Inc. v. Stiles, 268 F.2d 400 (5th Cir.1959); Camplese v. Consolidated Rail Corp., 594 F.Supp. 44, 45-48 (M.D.Pa.1984); Carver v. Consolidated Rail Corp., 600 F.Supp. 125, 125-27 (E.D.Pa.1984). However, the question remains open in this circuit notwithstanding the approach of the eightieth anniversary of the FELA, and Poleto argues that we should find that the statute authorizes the award of prejudgment interest. He argues that such an award would be consistent with the FELA and would further Congress' purposes in enacting the statute. He also invokes the equitable powers of federal courts and argues that, in not mentioning prejudgment interest, the general federal interest statute, 28 U.S.C. Sec. 1961, does not prohibit a court from making such a prejudgment interest award in pursuit of FELA's general purpose of "provid[ing] liberal recovery for injured workers," quoting Kernan v. American Dredging Co., 355 U.S. 426, 432, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958); see also Garcia v. Burlington Northern R.R., 597 F.Supp. 1304 (D.Colo.1984) (awarding prejudgment interest in an FELA case). Finally, Poleto presses us to apply Pennsylvania Rule of Civil Procedure 238, which allows prejudgment interest.[5]
 
 A.
 
 9
 We note at the outset of our analysis that the availability of interest in an action arising under a federal statute is governed by federal law, not the law of the forum state. See Carver, 600 F.Supp. at 125-26; see also Norfolk & W. Ry. v. Liepelt, 444 U.S. 490, 493, 100 S.Ct. 755, 757, 62 L.Ed.2d 689 (1980) ("questions concerning the measure of damages in an FELA action are federal in character").[6] Because Poleto's claim against Conrail is predicated upon a violation of a federal statute, state substantive law, particularly Pennsylvania Rule of Civil Procedure 238, is not implicated. Carpa, Inc. v. Ward Foods, 567 F.2d 1316, 1321 (5th Cir.1978) (citing cases). Any claim to prejudgment interest must therefore be derived from federal statutory sources.
 
 B.
 
 10
 Both the general federal interest statute, 28 U.S.C. Sec. 1961, and the FELA are silent on the issue of prejudgment interest. The silence of neither statute is controlling, however. Absent an express prohibition within 28 U.S.C. Sec. 1961, Congress has not by its silence ruled out the award of prejudgment interest. Olsen v. Shell Oil Co., 708 F.2d 976, 983-84 (5th Cir.1983); Bricklayers' Pension Trust Fund v. Taiariol, 671 F.2d 988, 989 (6th Cir.1982) (citing cases).[7] The absence of an FELA provision concerning prejudgment interest similarly does not end our inquiry. As the Supreme Court has instructed,
 
 
 11
 the failure to mention interest in statutes which create obligations has not been interpreted by this Court as manifesting an unequivocal congressional purpose that the obligation shall not bear interest. For in the absence of an unequivocal prohibition of interest on such obligations, this Court has fashioned rules which granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the light of general principles deemed relevant by the Court.
 
 
 12
 Rodgers v. United States, 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947) (citations omitted).
 
 
 13
 In general, Congressional intent must guide our determination of whether we should imply a statutory provision that was not explicitly enacted, see Petro-Tech v. Western Co., 824 F.2d 1349, 1356, (3d Cir.1987); in particular, it must guide our determination of the availability of prejudgment interest under the FELA. Absent special circumstances, when Congress has been silent, we look to the purposes behind a statute as a general indication of Congressional purpose. Compare General Motors Corp. v. Devex Corp., 461 U.S. 648, 655, 103 S.Ct. 2058, 2062, 76 L.Ed.2d 211 (1983) ("The standard governing the award of prejudgment interest under [the patent laws] should be consistent with Congress' overriding purpose of affording patent owners complete compensation. In light of that purpose, we conclude that prejudgment interest should ordinarily be awarded.") with Rodgers, 332 U.S. at 373-76, 68 S.Ct. at 6-8 (denying prejudgment interest under the Agricultural Adjustment Act of 1938 in the face of Congressional silence because of policies of the Act). We therefore turn to an examination of the Congressional purposes in exercising the FELA to determine whether those purposes would be furthered by imposition of prejudgment interest.
 
 C.
 
 14
 For us to award prejudgment interest, we must find that it would advance Congress' purpose in enacting "liberal recovery" under the FELA. Kernan, 355 U.S. at 432, 78 S.Ct. at 398.[8] In this regard, Poleto is aided by the Supreme Court's recent acknowledgment that the FELA is expansive in securing full recompense for injured railroad workers:
 
 
 15
 The coverage of the statute is defined in broad language, which has been construed even more broadly. We have recognized generally that the FELA is a broad remedial statute, and have adopted a 'standard of liberal construction in order to accomplish [Congress'] objects.'
 
 
 16
 Atchison, T. & S.F. Ry. v. Buell, --- U.S. ----, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (citation omitted).[9] In the face of the adverse weight of the caselaw addressing the prejudgment interest issue, Poleto seeks his own caselaw support. He finds it only in Garcia, 597 F.Supp. 1304, a case that has been rejected by the court of appeals of its own circuit, see Wilson v. Burlington Northern Ry., 803 F.2d 563 (10th Cir.1986), but which nonetheless forcefully articulates the ways in which prejudgment interest would contribute to full recompense.
 
 
 17
 In Garcia, the district court suggested two ways in which prejudgment interest would further the purposes of the FELA. "First, full compensation to an injured worker requires compensation from the date of injury." 597 F.Supp. at 1308. Because an injured worker must pay out-of-pocket expenses despite a debilitating injury that interrupts the flow of income, reasons Garcia, interest on a jury award should run from injury, which is the point from which income is first interrupted. "Second ... an injured worker's damages should not depend on the mere fortuity of when the case goes to trial." Id. Where jury verdicts are returned at different times, "[t]wo railroad employees suffering identical injuries on the same day could recover significantly different actual economic benefits even if their respective jury verdicts were for identical dollar amounts." Id. at 1308-09.[10]
 
 
 18
 This holding represents the culmination of a trend in the relevant jurisprudence. The common law had been hostile to the award of prejudgment interest, an attitude that commentators have considered a vestige of the medieval view that considered all forms of interest usurious. See, e.g., Dobbs, Remedies, 165 (1973); McCormick, Damages Sec. 51, at 207 (1935). This attitude, it should be noted, prevailed at the turn of the century, when the FELA was enacted and court cases first contemplated the availability of prejudgment interest. See Wilson, 803 F.2d at 565. Subsequent cases have relied on these early cases as authority for denying prejudgment interest. See, e.g., Chicago, M., St.P. & P. R.R. Co. v. Busby, 41 F.2d 617 (9th Cir.1930).
 
 
 19
 As this hostility ebbed, it was replaced by "the hoary distinction between 'liquidated' [i.e., not reduced to a dollar amount] and 'unliquidated' claims," Moore-McCormack Lines v. Richardson, 295 F.2d 583, 592 (2d Cir.1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962), the former being entitled to prejudgment interest, whereas the latter was not. See, e.g., Note, Recovery of Prejudgment Interest on an Unliquidated State Claim Arising Within the Sixth Circuit, 46 U. Cin.L.Rev. 151, 153 (1977). The distinction has survived, primarily in those jurisdictions that limit prejudgment interest to claims whose amount can be ascertained before trial and disallow it when a claim is not only unliquidated, but is also considered unascertainable. See Note, Prejudgment Interest: An Element of Full Compensation in Wrongful Death Cases, 1981 U.Ill.L.Rev. 453, 460-61; see also 22 Am.Jur.2d, Damages, Sec. 191 (1965) (criticizing "unascertainable" distinction in personal injury actions).
 
 
 20
 Some courts have recently suggested that the liquidated/unliquidated distinction should be abandoned in cases where the economic character of the damages being awarded is apparent. For example, the Ninth Circuit has noted in dicta that,
 
 
 21
 even where a claim is not based on a liquidated sum or the prejudgment interest statute is otherwise inapplicable, courts have nonetheless permitted in proper cases the recovery of interest by way of damages, as a means of making the plaintiff whole. The recovery includes as an item of damages compensation for the delay between the time of injury and the awarding of damages.
 
 
 22
 Turner v. Japan Air Lines, Inc., 702 F.2d 752, 756 n. 4 (9th Cir.1983) (citations omitted). Moreover, the Supreme Court has apparently abandoned the distinction between liquidated and unliquidated claims, at least in the context of prejudgment interest in patent infringement actions. Compare Duplate Corp. v. Triplex Safety Glass Co., 298 U.S. 448, 56 S.Ct. 792, 80 L.Ed. 1274 (1936) (generally awarding prejudgment interest only from the date on which damages were liquidated) with Devex, 461 U.S. at 651-55, 103 S.Ct. at 2060-62 (rejecting contention that Congressional amendment incorporated Duplate; holding that prejudgment interest should ordinarily be awarded).
 
 
 23
 Notwithstanding this movement toward the award of prejudgment interest for economic harm in all cases, it cannot be gainsaid that the prevailing rule is to deny prejudgment interest except when damages can be easily ascertained prior to trial. Because the question nonetheless remains open in this circuit, however, we must independently assess Poleto's argument and, insofar as it principally relies on that case, the district court's opinion in Garcia.
 
 D.
 
 24
 The district court in Garcia looked to the policy of liberal recovery that underlies the FELA, see, e.g., Atchison Topeka, --- U.S. ----, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), and found that it would be furthered by awarding prejudgment interest. Cf. Devex, 461 U.S. at 655, 103 S.Ct. at 2062 (finding award of prejudgment interest "consistent with Congress' overriding purpose of affording patent owners complete compensation"); N.L.R.B. v. American Compress Warehouse, 374 F.2d 573, 575 (5th Cir.1967) (prejudgment interest furthers the policy that the "employer make the discharged employees whole for any loss of pay they may have suffered by reason of the discrimination against them. Interest payments help effect 'a restoration of the situation, as nearly as possible, to that which would have been obtained but for the illegal discrimination.' ") Because the FELA seeks fully to compensate injured railroad employees, denying prejudgment interest would seem to work against the statutory scheme--"[t]he interest foregone on lost income or on money spent for out-of-pocket expenses from the date of loss to the time of compensation is as much a part of making an injured party whole as is the calculation of her wage rate." Wilson, 803 F.2d at 566 (McKay, J., concurring). Because a proper criterion for determining Congressional intent is the policy of the statute, see supra at 1274-75, Garcia makes a strong case that the award of prejudgment interest would further the statutory purpose.[11]
 
 
 25
 Although not an affirmative reason for granting prejudgment interest, we note that Poleto's case would allow for the practical application of prejudgment interest. This is because, unlike the situation in Wilson, the district court submitted carefully crafted special interrogatories to the jury that segregated past economic damages from non-economic and future economic damages.[12] It has been suggested that when a jury has been asked to render only a general verdict, it might be presumed to have included prejudgment interest in its calculation of damages. "[N]o one would be so naive as to suppose that juries do not throw into the scales the years that a plaintiff may have had to wait before his case can be heard by a jury." Moore-McCormack, 295 F.2d at 594; see also Hooks v. Washington Sheraton Corp., 642 F.2d 614, 618-19 (D.C.Cir.1980) (Mikva, J., dissenting) ("The jury's verdict is an assessment of the plaintiff's damages as of the date it is returned and includes interest as damages."); cf. Restatement (Second) Torts Sec. 913(2) (not allowing interest, but allowing "the time that has elapsed between the harm and the trial [to] be considered in determining the amount of damages.").[13] However, the situation differs where carefully crafted interrogatories have been submitted to the jury. Special interrogatories constrain the jury to determining the dollar amount of the damage only, leaving to the court the task of adding prejudgment interest to account for the consequence of delay. Additionally, by submitting special interrogatories to the jury, the district court segregated the portion of Poleto's award that represents past economic harms from that which represents the non-economic and the future economic portion of his loss.[14]
 
 
 26
 In sum, there is an excellent case that an award of prejudgment interest for past economic loss would further the goal of liberal recovery that underlies the FELA. An injured worker forgoes income, yet must meet the expenses of daily life before compensation for his injury is reduced to judgment. Prejudgment interest for economic losses accounts for this period between the date of the loss and the date of its ascertainment, thereby contributing to making the plaintiff whole. As the Supreme Court has explained in the context of holding that prejudgment interest should generally be awarded in patent cases, "[a]n award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the forgone use of the money between the time of infringement and the date of the judgment." Devex, 461 U.S. at 655-56, 103 S.Ct. at 2062-63. The case for prejudgment interest appears at least as strong in FELA as in patent cases.
 
 E.
 
 27
 Despite the apparent wisdom of an award of prejudgment interest in the case before us, we are compelled by other considerations to uphold the district court's denial of its award. The FELA has been in existence since the turn of the century, yet none of the circuits award prejudgment interest in cases that arise under the statute. Few of the cases contain any extensive discussion of the subject, see, e.g., Pratt, 142 F.2d 847, and, as we have suggested, many of the recent cases simply note that the issue was settled in an older case that disposed of the point summarily, see, e.g., Busby, 41 F.2d 617. Despite the apparent weakness, however, we find the prior holdings of these courts significant for two reasons.
 
 
 28
 First, they reflect the view that at the time of passage, Congress did not intend prejudgment interest in the FELA. Such a view is extensively discussed in Wilson, 803 F.2d 563, and Camplese v. Consolidated Rail Corp., 594 F.Supp. 44 (M.D.Pa.1984), and it is easily understandable. The FELA represented a radical change from the common law in an attempt to assure workers a more sure recovery by abolishing many traditional defenses. Additionally, as Judge Seth's majority opinion in Wilson notes, at the time the FELA was enacted in 1908 the common law uniformly rejected the imposition of prejudgment interest. In view of Congress' conscious focus on the manner in which the FELA should differ from common law, it is not insignificant that Congress failed to abrogate the prejudgment interest principle. Judge Seth found "some indication of legislative intent in Congress' failure to expressly abrogate that principle in passing the FELA when it did so to other well established doctrines," 803 F.2d at 565, and he concluded:
 
 
 29
 The omission by Congress in the FELA of such an express statement indicates to us that Congress did not intend to provide for prejudgment interest. Congress, in our view, reached a balance as to the many considerations before it on this then novel legislation and this we should not disturb.[15]
 
 
 30
 803 F.2d at 565. Similarly, Judge Rambo in Camplese found that
 
 
 31
 it is evident that Congress, by enacting FELA, has adjusted the equities between the railroad employer and the injured employee. To grant prejudgment interest would undermine the equities that have been balanced by the Act itself.
 
 
 32
 594 F.Supp. at 47-48.
 
 
 33
 The "balance" of which Judges Seth and Rambo speak is obviously the trade-off of employer and employee rights implicit in the FELA compensation scheme. It is far from certain that interest was a conscious factor in the striking of that balance; hence the argument is not without flaw. It may also be that, as Judge McKay noted in his thoughtful concurrence in Wilson:
 
 
 34
 It is when a court rigorously engages in thoughtful analysis in the face of legislative silence, rather than surmise chimerical legislative "intent," that it best fulfills its deliberative function and best serves to further the evolution of the law.
 
 
 35
 803 F.2d at 567 (McKay, J., concurring). However, notwithstanding the acknowledged force of plaintiff's argument, and like the other courts of appeals that have recently dealt with the issue, we are not sufficiently persuaded to depart from eighty years of precedent consistently interpreting the FELA as not permitting prejudgment interest. We simply find evidence lacking that Congress intended prejudgment interest to accompany FELA awards.
 
 
 36
 Second, whether the early judicial decisions were or were not proper, their view has continued to prevail with virtual unanimity until the present day. While Congressional silence in the face of judicial interpretation is not normally a sufficient indication of Congressional approval, a consistent judicial approach of many years may become enough. Cf. Flood v. Kuhn, 407 U.S. 258, 283-84, 92 S.Ct. 2099, 2112-13, 32 L.Ed.2d 728 (1972) (consistent judicial view of antitrust immunity for baseball, coupled with evidence of Congressional consideration of amendment, indicates that change should come from the legislature). In this case, Congress has failed to upset the careful balance of employer and employee rights. While that inaction might be insufficient if the law had moved so far as to make the denial of prejudgment interest an aberration, we consider it a sufficient expression of Congressional approval to require that change come from Congress.
 
 
 37
 If Congress wished to change the consistent result of the courts, it could have amended the statute. It has not. We shall therefore uphold the district court in its denial of prejudgment interest to Poleto.[16]
 
 III. POSTJUDGMENT INTEREST
 
 38
 Poleto argues that postjudgment interest under the general federal interest statute, 28 U.S.C. Sec. 1961, should run in this case from the date of the verdict, not the date of the entry of judgment. Those two dates were separated by approximately three months, during which the court received briefs on and decided issues concerning the effect of a pre-trial release agreement between Poleto and Hammermill. Because all the substantive issues were decided by the jury upon the verdict, argues Poleto, it is analogous to a final judgment for purposes of section 1961. We agree.
 
 
 39
 Although section 1961 is clear in its provision that postjudgment interest "shall be calculated from the date of the entry of the judgment," the circuits are split concerning when postjudgment interest under section 1961 should be calculated. The Second and Tenth Circuits, the former over a vigorous dissent by Judge Lumbard, have chosen to read section 1961 narrowly, reasoning that "the date of the entry of the judgment" means the date on which the court actually enters the judgment onto the docket. See Powers v. New York Central R.R., 251 F.2d 813 (2d Cir.1958); Miller's Nat'l Ins. Co. v. Wichita Flour Mills Co., 257 F.2d 93, 104 (10th Cir.1958). The Ninth and the Fifth Circuits, on the other hand, read section 1961 more broadly. Looking both to the policies that underlie section 1961 and to Federal Rule of Civil Procedure 58, which provides for prompt entry of judgment following verdict, these circuits look to the date of the verdict as the date from which postjudgment interest should run. See Turner v. Japan Lines, Ltd., 702 F.2d 752 (9th Cir.1983); Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033, 1048 (5th Cir.1970); Louisiana & Arkansas Ry. v. Pratt, 142 F.2d 847, 849 (5th Cir.1944) (precursor to section 1961). But see Barrios v. Louisiana Const. Materials Co., 465 F.2d 1157, 1168 (5th Cir.1972).
 
 
 40
 We conclude that the better rule is that postjudgment interest under section 1961 should run from the date that the verdict is rendered. We find that both the purposes of postjudgment interest and the structure of the relevant laws are furthered by this rule. We consider each of these bases in turn.
 
 
 41
 First, the purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant. Turner, 702 F.2d at 756-57 (citing cases). The verdict assesses damages up to the time that it is rendered; however, payment does not occur immediately upon return of the verdict. Postjudgment interest represents the cost of withholding the amount owed the plaintiff once that sum has been determined in a court proceeding. Hooks v. Washington Sheraton Corp., 642 F.2d 614, 618-19 (D.C.Cir.1980) (Mikva, J., dissenting).
 
 
 42
 The purpose of postjudgment interest is not diluted where, as here, the initial ascertainment of damages is left standing but a delay occurs between the date of the ascertainment and the date of the eventual entry of judgment. Turner, 702 F.2d at 756-57. "If the plaintiff is to be made whole on the date of payment, interest must be allowed during the period between verdict and payment." Hooks, 642 F.2d at 619 (Mikva, J., dissenting). Moreover, as the Ninth Circuit has observed, "the real issue lurking behind the proper interpretation of section 1961 is, regardless of why a delay exists between the verdict and the entry of judgment based on that verdict, 'who should bear the costs resulting from the loss of the use of money.' " Turner, 702 F.2d at 756-57 (quoting Note, Interest on Judgments in Federal Court, 64 Yale L.J. 1019 (1955)). We agree with the Ninth Circuit that it would be anomalous to read section 1961 so narrowly that the cost of delay in payment would be imposed on a successful plaintiff.
 
 
 43
 Second, section 1961 does not exist in isolation. While it looks to the date on which judgment is entered, the Federal Rules of Civil Procedure determine what that date should be. Section 1961 must therefore be read in conjunction with the Rules.
 
 
 44
 Federal Rule of Civil Procedure 58(2) directs that, "upon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of judgment." See Gorsalitz, 429 F.2d at 1047; cf. Turner, 702 F.2d at 756 n. 5 (Rule 58(1)); Pratt, 142 F.2d at 849 (same); Hooks, 642 F.2d at 619 (Mikva, J., dissenting) (same); Powers, 251 F.2d at 819 (Lumbard, J., dissenting) (same); Note, Interest on Judgments in the Federal Courts, 64 Yale L.J. 1019, 1036 (1955). For a general verdict or a decision by the court that a party is to recover a certain sum, Rule 58(1) similarly directs that the judgment should be entered "forthwith." See Turner, 702 F.2d at 756 n. 5; Gorsalitz, 429 F.2d at 1047; Pratt, 142 F.2d at 849; Hooks, 642 F.2d at 619 (Mikva, J., dissenting); Powers, 251 F.2d at 819 (Lumbard, J., dissenting); Note, Interest on Judgments in the Federal Courts, 64 Yale L.J. 1019, 1036 (1955). These directions "indicate that the process is not to be a dilatory one." C. Wright, The Law of Federal Courts, Sec. 98, at 660.
 
 
 45
 Delay in entering the judgment after the verdict has been rendered thus contravenes Rule 58's express direction of promptness and may frustrate section 1961's purpose. See 6A J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice p 58.04 & n. 16 (2d ed. 1986). Because the entry of judgment begins the time for so many important purposes, Rule 58 was adopted to "enhance[ ] certainty by insisting on a formality." Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961-1963 (II), 77 Harv.L.Rev. 801, 828-32 (1964); see generally C. Wright and A. Miller, Federal Practice and Procedure, paragraphs 2781-86 (1973). To prevent prejudice to the plaintiff's right to postjudgment interest, the court should enter judgment immediately after the jury's verdict. Cf. Roberts v. Ross, 344 F.2d 747, 753 (3d Cir.1965) (delay in entry of judgment held "neither required nor appropriate"); Matteson v. United States, 240 F.2d 517, 519 (2d Cir.1956) (discouraging delay for taking briefs on judgment molding). Because the court did not enter the judgment promptly, but delayed some three months, we believe that we should look to the date of the verdict as the date that the judgment should have been entered and as the appropriate date from which postjudgment interest under section 1961 should run.
 
 
 46
 We are mindful of the reason for the delay in this case. The district court was acting diligently to resolve a complex issue concerning molding of the judgment, see supra at 1273-1274, and we do not fault the trial judge. When post-trial matters require time for proper resolution, however, the better practice is not to delay entry of the judgment (thereby prejudicing the successful plaintiff's claim to postjudgment interest), but to enter the judgment and to entertain a motion to stay its execution pursuant to Federal Rule of Civil Procedure 62(b). See Turner, 702 F.2d at 756-57 n. 5; see also Note, Interest in Judgments in the Federal Courts, 64 Yale L.J. 1019 (1955). Where this practice has not been followed, as in Poleto's case, prejudgment interest should nonetheless run from the date of the verdict. See Turner, 702 F.2d at 757; Gorsalitz, 429 F.2d 1047-48.
 
 
 47
 We therefore read section 1961 in conjunction with Rule 58 and find that postjudgment interest is to be calculated from the date of the entry of the verdict. The judgment of the district court must therefore be reversed on this point.
 
 
 48
 IV. PENNSYLVANIA'S REINTERPRETATION OF THE UCATA
 
 
 49
 After the district court had decided this case, the Pennsylvania Supreme Court reinterpreted the UCATA in Charles v. Giant Eagle Markets, 513 Pa. 474, 522 A.2d 1 (1987), thereby overruling its decision in Daugherty v. Hershberger, 386 Pa. 367, 126 A.2d 730 (1956).[17] Poleto argues that we must account for this change in law upon appeal. See United States v. The Schooner Peggy, 1 Cranch 103, 110, 2 L.Ed. 49 (1801); Danbury, Inc. v. Olive, 820 F.2d 618, 625 (3d Cir.1987).
 
 
 50
 The threshold issue for this determination is whether state or federal law controls contribution between Hammermill and Conrail. Generally speaking, issues of contribution that are controlled by federal statutes are matters of federal law.[18] The district court in this FELA case, however, looked to the law of Pennsylvania for molding the judgment, finding that there was no federal interest at stake. We agree with the district court that the law of Pennsylvania governs the contribution issue, because, at root, it is a controversy between Conrail and Hammermill that sounds exclusively in state law.
 
 
 51
 Conrail joined Hammermill as a third party defendant on the basis of two state law issues, negligence and contractual indemnification. The jury found Hammermill to be 25% liable for the injuries suffered by Poleto, see supra at 1273, a determination that necessarily was based on state legal issues. Where an entire case presents only issues of state law for resolution by federal courts under their diversity jurisdiction, contribution among tortfeasors has been considered a matter of state substantive law to be applied by the federal courts. See, e.g., Smith v. Whitmore, 270 F.2d 741, 743 (3d Cir.1959). This logic does not vary when only a portion of the case, the only issue between joint tortfeasors, concerns state law. We have therefore held that "third-party actions for contribution arising out of FELA claims are governed by state law." Shields v. Consolidated Rail Corp., 810 F.2d 397, 399 (3d Cir.1987); Denicola v. G.C. Murphy Co., 562 F.2d 889, 895 (3d Cir.1977); Kennedy v. Pennsylvania R.R., 282 F.2d 705, 709 (3d Cir.1960). Our circuit is not alone in this determination: contribution among tortfeasors in FELA actions "has been uniformly held to be determined by state law." Annot., 19 A.L.R.3d 928, 931; see, e.g., Alabama Great S. R.R. v. Chicago & N.W. Ry., 493 F.2d 979, 983 (8th Cir.1974) (citing cases); Grunenthal v. Long Island R.R., 388 F.2d 480, 482 (2d Cir.1968); Ross v. Penn Cent. Transp. Co., 433 F.Supp. 306 (W.D.N.Y.1977); Brenham v. Southern Pacific Co., 328 F.Supp. 119 (W.D.La.1971).
 
 
 52
 In molding the judgment, the district court relied explicitly on the Pennsylvania authorities that the Pennsylvania Supreme Court explicitly overruled in deciding Giant Eagle. We must therefore remand the case for reconsideration of the contribution issue in light of Giant Eagle. See Schooner Peggy, 1 Cranch at 110; Danbury, at 625.
 
 V. CONCLUSION
 
 53
 For the foregoing reasons, we will affirm the judgment of the district court in all respects except two; we will reverse the judgment and remand to the district court for recalculation of post judgment interest, see supra Part III, and for application of Giant Eagle to the molding of the judgment, see supra Part IV.
 
 
 
 *
 The Honorable Edward Dumbauld, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Conrail argues first that the joint tortfeasor release executed by Poleto and Hammermill operates to release Conrail from liability to Poleto because Conrail is only secondarily liable for injuries that occurred on Hammermill's platform. Second, Conrail submits that, as one who is only secondarily liable, it is entitled to indemnification from Hammermill. Third, because the jury did not first consider evidence of Hammermill's liability, Conrail argues that the district court's bifurcation of the trial was prejudicial error. Fourth, Conrail asserts that receipt of the testimony of Poleto's economic expert witness in certain matters, including unemployment compensation, insurance premiums and projected future earnings, was error. Finally, Conrail contends that the district court erred in submitting special interrogatories to the jury for separate assessment of damages for pain and suffering and loss of quality or enjoyment of life
 
 
 [2]
 The district court found no basis for "pendent jurisdiction" and granted Hammermill's motion to dismiss for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Conrail, however, invoked the court's ancillary jurisdiction and filed a third party complaint to renew its claim against Hammermill. Hammermill's renewed 12(b)(1) motion was denied on May 29, 1984
 
 
 [3]
 For example, the district court asked the jury to identify the damages in the following discrete categories: (1) lost wages from the date of the accident up to the date of the verdict; (2) loss of future income, reduced to present value; (3) pain and suffering from the date of the accident to the date of the verdict; (4) future pain and suffering; (5) loss of quality or enjoyment of life from the date of the accident to the date of the verdict; and (6) future loss of quality or enjoyment of life
 
 
 [4]
 $120,000 is the difference between the $236,250 for which the jury found Conrail liable, and the $116,250 by which Hammermill's $195,000 settlement payment exceeded the $78,750 for which the jury would have found it liable
 
 
 [5]
 Pa.R.Civ.P. 238(a) provides:
 Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court ... shall
 (1) add to the amount of compensatory damages in ... the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict or decision;
 (2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision.
 Subdivision (e) provides that delay damages are not to be awarded where the jury verdict is not greater than 125 percent of any settlement offer made by the defendant prior to trial.
 
 
 [6]
 This is to be contrasted with the situation where federal jurisdiction is predicated upon diversity of citizenship; there, matters of prejudgment interest are considered substantive and are governed by state law. See Jarvis v. Johnson, 668 F.2d 740, 746-47 (3d Cir.1982)
 
 
 [7]
 Congress considered an amendment to 28 U.S.C. Sec. 1961 that would have authorized the award of prejudgment interest, see S.Rep. No. 275, 97th Cong., 2d Sess. 11-12, reprinted in 1982 U.S. Code & Ad. News 11, 21-22, but, without comment, deleted that proposal from the final enactment. See Federal Court Improvements Act of 1982, Pub.L. 97-164, 96 Stat. 25. Although Congress failed to adopt the amendment, it did not enact an express prohibition of prejudgment interest
 
 
 [8]
 In Kernan, the Supreme Court also recognized that, in enacting the FELA, "Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty towards its workers." 355 U.S. at 432, 78 S.Ct. at 398
 
 
 [9]
 The Supreme Court has also held that the measure of recovery under the FELA is "the damages ... [that] flow from the deprivation of ... pecuniary benefits." Michigan Central R.R. v. Vreeland, 227 U.S. 59, 70, 33 S.Ct. 192, 196, 57 L.Ed. 417 (1913), quoted in Norfolk & W. Ry. Co. v. Liepelt, 444 U.S. 490, 493, 100 S.Ct. 755, 757, 62 L.Ed.2d 689 (1980)
 
 
 [10]
 The district court in Garcia also offered a third reason for awarding prejudgment interest. It found that the availability of prejudgment interest would discourage defendants from pursuing the tactical delay that prompts plaintiffs to settle on more favorable terms (a rationale, we note, that is similar to that underlying Pennsylvania Rule of Civil Procedure 238). "Depriving an injured worker of the right to interest on the debt created with his injury merely encourages defendants to put off the day of judgment as long as possible," reasoned the court. 597 F.Supp. at 1309
 
 
 [11]
 We find Garcia unconvincing to the extent that it relies on interest as a way to rectify litigation delay, as does Pennsylvania's Rule 238, which is relied on by Poleto. Although Congress did enact the FELA for compensatory purposes, nothing in the statute, its legislative history, or the jurisprudence surrounding its application lends support to the conclusion that the Congress sought to rectify litigation delays when it enacted the statute. Similarly, the general federal interest statute does not attempt to rectify this problem; to the contrary, Congress did not adopt the amendments that would have provided for prejudgment interest, intended in part as delay damages. See supra at 1274, n. 7; cf. Fed.R.Civ.P. 68 (shifting costs onto party who rejects a settlement offer and does not obtain a more favorable judgment at trial)
 
 
 [12]
 Judge McKay concurred in Wilson, instead of dissenting, because the district court's verdict in that case did not segregate past economic harms. 803 F.2d at 567 (McKay, J., concurring)
 
 
 [13]
 For empirical evidence that juries award prejudgment interest, see S. Carroll, Jury Awards and Prejudgment Interest in Tort Cases (Rand, May 1983)
 
 
 [14]
 Not all portions of a verdict are economic in character, and only the sum that represents past economic loss is properly adjusted to present value through an interest calculation. Non-economic awards, such as pain and suffering on punitive damages, do not compensate for market-induced harms, so they do not require the adjustment for the time the successful plaintiff's money was out of the market which prejudgment interest provides. See Wilson, 803 F.2d at 567 (McKay, J., concurring); see also 22 Am.Jur.2d, Damages Sec. 191 (1965) (suggesting that delay in paying for all but pain and suffering compensation should be adjusted through an award of interest). For example, as the Supreme Court of California has noted, "damages for the intangible, noneconomic aspects of mental and emotional injury are of a different nature. They are inherently nonpecuniary ... [and] necessarily left to the subjective discretion of the trier of fact. Retroactive interest on such damages adds uncertain conjecture to speculation." Greater Westchester Homeowners Assoc. v. City of Los Angeles, 26 Cal.3d 86, 160 Cal.Rptr. 733, 603 P.2d 1329, 1338 (1979)
 Future economic harms must similarly be excluded from the adjustment of prejudgment interest, for interest adjustment would be antithetical to adjusting such a future stream of money to its present value. The Supreme Court requires that, for example, the portion of the verdict that is awarded to compensate for the loss of earning power must be reduced to present value dollars. See Cheasapeake & Ohio R.R. v. Kelly, 241 U.S. 485, 489, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916). Significantly, the Court recognized that the reason for reducing future earnings to present dollars is to "tak[e] account of the earning power of the money that is presently to be awarded." Id.
 
 
 [15]
 Judge Seth rejected plaintiff's arguments based on: (1) the "dramatic and extraordinary" change in the importance of interest in modern society; (2) the need to remedy trial delay; and (3) the court's "equitable powers." We agree
 
 
 [16]
 We also note that, were prejudgment interest allowed, its award would generally be committed to the discretion of the district court. As the Supreme Court has explained in the patent context, "it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the [plaintiff] has been responsible for undue delay in prosecuting the lawsuit." Devex, 461 U.S. at 657, 103 S.Ct. at 2063 (footnote omitted). Because we do not find that prejudgment interest is allowable under the FELA, however, we, of course, do not reach the issue of whether the district court abused its discretion in denying prejudgment interest to Poleto
 
 
 [17]
 Prior to Giant Eagle, a non-settling tortfeasor was relieved of responsibility for payment of his proportionate share of damages to the extent that the consideration paid by a settling tortfeasor for a release from the plaintiff exceeds the settling tortfeasor's proportionate share of damages as determined by the jury. Giant Eagle, however, reversed this rule and requires the non-settling tortfeasor to pay his full pro-rata share as determined by the jury. See 522 A.2d at 2
 
 
 [18]
 The controversy between Poleto and Conrail, in contrast to that between Hammermill and Conrail, was predicated on a federal statute, the FELA. In cases that arise wholly under federal law, federal common law and not state law is applicable. See, e.g., Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974) (applying federal common law on contribution to admiralty case); Donovan v. Robbins, 752 F.2d 1170 (7th Cir.1984) (ERISA case); Miller v. Apartments and Homes of New Jersey, 646 F.2d 101 (3d Cir.1981) (Civil Rights Act case); Glus v. G.C. Murphy Co., 629 F.2d 248 (3d Cir.1980) (labor case), cert. denied, 449 U.S. 949, 101 S.Ct. 351, 66 L.Ed.2d 212 (1980); Kohr v. Allegheny Airlines, 504 F.2d 400 (7th Cir.1974), cert. denied, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975) (aviation case); de Haas v. Empire Petroleum Co., 286 F.Supp. 809 (D. Colo.1968), mod. on other grounds, 435 F.2d 1223 (10th Cir.1970) (securities case)