**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JANE P. KREISCHER; CHARLES F.
KREISCHER; EDWIN F. KREISCHER;
BARBARA W. KREISCHER,
Plaintiffs-Appellants,

v.

THE KERRISON DRY GOODS COMPANY;
EDWIN H. POULNOT, III; DALE
WIDMAN; GENE POULNOT RIGGS;
DAVID LAWRENCE POULNOT; JOAN
HUTCHINSON POULNOT,
Defendants-Appellees.

No. 99-1966

JANE P. KREISCHER; CHARLES F.
KREISCHER; EDWIN F. KREISCHER;
BARBARA W. KREISCHER,
Plaintiffs-Appellees,

v.

THE KERRISON DRY GOODS COMPANY;
EDWIN H. POULNOT, III; DALE
WIDMAN; GENE POULNOT RIGGS;
DAVID LAWRENCE POULNOT; JOAN
HUTCHINSON POULNOT,
Defendants-Appellants.

No. 99-1985

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
C. Weston Houck, Chief District Judge.
(CA-91-3255-2-12)

Argued: March 2, 2000

Decided: August 16, 2000

Before WILKINS and LUTTIG, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed in part and remanded in part by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** James Robert Howard, NALL & MILLER, L.L.P.,
Atlanta, Georgia, for Appellants. Robert Buford Wallace, WALLACE
& TINKLER, Charleston, South Carolina, for Appellees. **ON
BRIEF:** Jay Pontrelli, NALL & MILLER, L.L.P., Atlanta, Georgia,
for Appellants. Robert B. Wallace, WALLACE & TINKLER,
Charleston, South Carolina; T. Alexander Beard, BEARD LAW
OFFICES, Mt. Pleasant, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The plaintiffs, Jane P. Kreischer, Charles F. Kreischer, Edwin F.
Kreischer, and Barbara Kreischer ("the Kreischers"), are minority
shareholders in The Kerrison Dry Goods Company ("Kerrisons" or
the "company"). Edwin H. Poulnot, III, Dale Poulnot Widman, Gene
Poulnot Riggs, David Lawrence Poulnot, and Joan Hutchison Poulnot
("the Poulnots"), are majority shareholders in Kerrisons. The Kreis-
chers sued Kerrisons and the Poulnots in the District of South Caro-
lina, requesting dissolution of Kerrisons due to alleged fraud,
oppression, and breach of fiduciary duties by the Poulnots. The dis-

2

trict court refused to order dissolution, but required the Poulnots to purchase the Kreischers' shares for market value. We affirmed on appeal, and remanded to the district court with instructions to order the purchase of ten shares that had not been repurchased with the rest of the shares. On remand, the Kreischers argued that they were entitled to an award of attorneys' fees from the Poulnots. The district court declined to award attorneys' fees to the Kreischers, but did award postjudgment interest to them for the aforementioned ten shares.

The Kreischers appeal from the district court's denial of attorneys' fees. The Poulnots appeal the district court's award of postjudgment interest. For the reasons stated herein, we hold that the district court did not err in denying the Kreischers' claim for attorneys' fees, but that the district court failed to determine properly the date from which postjudgment interest should be calculated. Accordingly, we affirm the district court's decision to deny attorneys' fees, and remand to the district court for proper determination of postjudgment interest.

I.

Kerrisons is a family-owned South Carolina company that once operated several department stores and specialty stores in South Carolina. The Kreischers are the minority shareholders in Kerrisons, owning approximately 28% of the company. The Poulnots are the majority shareholders in Kerrisons. Although both the Poulnots and the Kreischers are on Kerrisons's Board of Directors, the Poulnots controlled the day-to-day operations of the company for many years.

Kerrisons began having financial problems in the mid-1980s. Stiff competition from national retailers resulted in net losses for Kerrisons in every year since 1986. Kerrisons now consists of only one department store and a few specialty stores. In 1988, the Board of Directors discussed liquidating Kerrisons because of its continued financial deterioration. The Kreischers were very interested in liquidating the company, as they were not optimistic about the company's ability to turn a profit and wanted to realize some return for their minority shareholder interests.

In May 1990, the Kreischers approached Edwin Poulnot III (Edwin III), the President and lead shareholder in Kerrisons, about the possi-

bility of liquidation. Edwin III made a fairly low offer to purchase the Kreischers' shares, which they refused. The Kreischers responded with a counteroffer, which Edwin III refused.

In October 1991, the Kreischers sued the Poulnots in the District of South Carolina, requesting dissolution of Kerrisons pursuant to section 33-14-300 of the South Carolina Code. See S.C. Code Ann. § 33-14-300 (Law. Co-op. 1990) ("§ 33-14-300"). The Kreischers alleged the following causes of action: (1) breach of fiduciary duties by the directors of Kerrisons; (2) breach of fiduciary duties by the officers of Kerrisons; (3) fraud; (4) conspiracy; (5) oppression; and (6) negligence, mismanagement, waste, and misapplication of corporate assets. The Kreischers brought their claims in their individual capacities and not as a derivative action on behalf of the corporation. They did so because they asserted that "squeeze-out" suits are not derivative actions.

On that basis, the Poulnots moved for and were granted partial summary judgment as to counts one through four on the ground that the Kreischers suffered no individual damages as a result of the events of which they complained. The district court permitted counts five and six to proceed to trial because individual shareholders may maintain such actions under South Carolina law. See id.

The district court bifurcated the trial into liability and valuation phases. A jury was selected and began hearing evidence on the liability phase, but the court dismissed the jury on July 28, 1993. The court did so because it concluded that judicial dissolution proceedings under § 33-14-300 are equitable, not legal; therefore, whether to grant the requested relief was a question for the court.

The district court rejected the Kreischers' allegations of improper conduct by the Poulnots. For example, the court stated the following in rejecting the Kreischers' claim of oppression:

> The plaintiffs also have not made out a case for oppression. Oppressive conduct is only made out if the plaintiffs can show the defendants treated them unfairly. The parties always treated each other the same until this litigation began according to the record. The plaintiffs historically chose to

take an inactive role in the running of the Company, and the defendants, for obvious reasons, were eager to oblige them. While the practices which the plaintiffs claim were oppressive may have often not been good business practices, the plaintiffs cannot show they were prejudiced in any way. . . . The defendants['] conduct simply does not rise to the level that this court believes calls for the extraordinary remedy of judicial dissolution.

(J.A. 1227.)

The district court concluded that dissolution of Kerrisons was not warranted, but that a court-ordered buyout of the Kreischers' shares was an equitable and appropriate solution to the matter. On January 29, 1997, after two valuation trials, the court concluded that the Kreischers' shares were worth $704,306.31. The court gave the Poulnots 120 days to pay that amount to the Kreischers in exchange for the shares. However, the district court failed to dispose of ten shares that Edwin Poulnot II (Edwin II) owned at his death. The ten shares were still in Edwin II's estate, but Jane Kreischer owned a beneficial interest in the shares under Edwin II's will.

The Kreischers appealed, challenging, among other things, the district court's finding that dissolution of Kerrisons was not warranted. We rejected the Kreischers' arguments. See Kreischer v. The Kerrison Dry Goods Co., Nos. 97-1230, 97-1800, 1999 WL 30836 (4th Cir. Jan. 26, 1999). Specifically, we held that "[s]ince the Kreischers demonstrated no injury to themselves, there can be no fraud with respect to those issues," id. at **6, and that"the record offers abundant evidence that establishes that there was no oppression," id. at **7. We also affirmed the district court's finding that the Kreischers' request for attorneys' fees was not ripe. See id. at **9.

The Poulnots cross-appealed, arguing that the district court erred in failing to order the Poulnots to purchase the ten shares from Jane Kreischer. We agreed, and instructed the district court to order the Poulnots to purchase the ten shares from Jane Kreischer. See id. at **13.

On remand, the Kreischers again pursued their claim for attorneys' fees. The Kreischers argued that their attorneys' fees for this case

were $2,474,339. On June 10, 1999, the district court rejected the Kreischers' claim for attorneys' fees. The court found that the Kreischers failed to establish that they were entitled to attorneys' fees under any of the exceptions to the American Rule. The court also rejected the Kreischers' claim that they should receive attorneys' fees under section 33-14-310(d) of the South Carolina Code. See S.C. Code Ann. § 33-14-310(d) (Law. Co-op. 1990) ("§ 33-14-310(d)").

Also in its June 10 order, the district court directed the Poulnots to purchase the remaining ten shares from Jane Kreischer. The court ordered that interest on the value of the ten shares would run from January 29, 1997, the date the court valued the rest of the Kreischers' shares.

The Kreischers now appeal the district court's refusal to award them attorneys' fees. The Poulnots appeal the running of postjudgment interest on the ten shares from January 29, 1997.

II.

A.

Federal courts apply the "American Rule" in deciding whether an award of attorneys' fees is appropriate. In the United States, each party in a lawsuit bears its own attorneys' fees"unless there is express statutory authorization to the contrary." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). The Supreme Court has recognized three exceptions, pursuant to which a federal court can award attorneys' fees through its inherent powers. These exceptions are: (1) where a party's litigation efforts directly benefit others (the "common fund" exception); (2) where a party willfully disobeyed a court order; and (3) where a party acts in bad faith, vexatiously, or for oppressive reasons (the "bad faith" exception). See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). The Fourth Circuit also has recognized an "essential to equity" exception that may apply in exceptional circumstances. See Rolax v. Atlantic Coast Line R.R. Co., 186 F.2d 473 (4th Cir. 1951). Although these exceptions exist, their status as exceptions must not be forgotten. The Supreme Court cautioned that "because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44.

6

In the instant case, the Kreischers argue that the district court should have awarded attorneys' fees under the "common fund" exception, the "bad faith" exception, and the "essential to equity" exception. The Kreischers also argue that the district court should have awarded attorneys' fees under § 33-14-310(d). We review a district court's decision to deny attorneys' fees for an abuse of discretion. See Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 631 (4th Cir. 1999).

1.

The Kreischers first argue that they are entitled to attorneys' fees under the common fund exception to the American Rule. The common fund exception typically applies in a shareholder derivative action. In such a case, a plaintiff who spends a considerable amount litigating the case for the benefit of the corporation and all of its shareholders may be entitled to reimbursement for litigation expenses. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 394-95 (1970). The Kreischers cannot rely on a monetary benefit to Kerrisons to support their claim for fees, as they asserted their claims as individuals rather than as a derivative action.

Recognizing this, the Kreischers argue that their claims against the Poulnots benefitted Kerrisons by forcing the Poulnots to organize Kerrisons's corporate records and discover the "truth" about the missing ten shares of stock. The Kreischers rely on the Supreme Court's holding in Mills, that the common fund exception may apply when a corporation receives no monetary benefit. See Mills, 396 U.S. at 395 (agreeing with "an increasing number of lower courts [that] have acknowledged that a corporation may receive a `substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature").

Mills, however, was a derivative case where the plaintiffs conferred a benefit on the corporation as a whole by overturning a defective proxy solicitation. The Kreischers fail to cite any cases applying the common fund exception to individual actions against a corporation. In addition, the Kreischers' claim that Kerrisons "benefitted" from their suit is speculative, at best. The benefits received by Kerrisons, better record keeping and discovery of the "truth" about corporate

7

stock, are incidental to any protracted litigation within a small corporation.

The district court recognized the Kreischers' claim for fees would tend to make an award of attorneys' fees the norm, rather than the exception, in actions against a corporation. Such a holding would contravene the Supreme Court's admonition that federal courts "exercise restraint and discretion" before awarding fees. See Chambers, 501 U.S. at 44. The common fund exception does not support the Kreischers' claim to an award of attorneys' fees.

2.

The Kreischers next argue that they are entitled to attorneys' fees under the exception for bad faith or oppressive conduct. The Kreischers allege the Poulnots engaged in bad faith and oppression both prior to and during the course of the litigation.

The Kreischers' argument that they are entitled to attorneys' fees for prelitigation bad faith and oppression is without merit. The district court found that the Poulnots were not guilty of fraud or oppression in its May 1, 1995 order denying the Kreischers' request for dissolution. We affirmed, specifically rejecting the Kreischers' claims of fraud and oppression. See Kreischer, 1999 WL 30836, at **10 ("At bottom, [the Kreischers'] argument is premised upon findings of fraud and oppression and other wrongful conduct . . . .[T]he Poulnots' conduct, although distasteful, did not rise to that level."). The Kreischers cannot relitigate these issues in the context of a claim for attorneys' fees. As before, the record supports the district court's finding that the Poulnots did not engage in prelitigation fraud or oppression. The Kreischers are not entitled to attorneys' fees for the Poulnots' prelitigation conduct, the issue as to prelitigation conduct having been resolved finally by the previous decision of this court.

The Kreischers also claim that they are entitled to attorneys' fees because the Poulnots acted vexatiously and in bad faith as litigants during the course of this action. The Kreischers argue that they were forced to incur substantial expenses in advancing their claims due to the Poulnot's false testimony and failure to produce records in discovery.

8

The district court rejected the Kreischers' allegations of discovery abuse in its January 29, 1997 order. The court stated that the "[the] claim that the defendants were somehow guilty of fraud or concealment of material facts is without merit." (J.A. 2110.) On June 10, 1999, the district court rejected the Kreischers' claim for attorneys' fees due to bad faith during the course of the litigation. The court held that "the defendants' conduct as litigants during this action does not come close to the type of conduct warranting the sanction of attorneys' fees. . . . [T]he plaintiffs['] claims of discovery abuses committed by the defendants [are] without merit." (J.A. 2251.)

The district judge presided over this proceeding for eight years; he was in the best position to determine whether the Poulnots were guilty of concealment or other discovery abuses, and the record contains nothing that indicates he abused his discretion in refusing to award attorneys' fees on this ground. The Kreischers are not entitled to attorneys' fees for the Poulnots' conduct during the course of the litigation.

3.

The Kreischers also contend that the district court should have awarded attorneys' fees under the "essential to equity" exception. The Kreischers rely on Rolax v. Atlantic Coast Line R.R. Co., 186 F.2d 473 (4th Cir. 1951), in support of their argument. In Rolax, the court stated that prevailing parties normally do not receive an award of attorneys' fees, but noted that, "in suit in equity, where the taxation of such costs is essential to the doing of justice, they may be allowed in exceptional cases." Id. at 481.

The Kreischers claim that their attorneys' fees exceed the amount they received from the Poulnots for their shares, resulting in a "net zero" benefit for this litigation. The Poulnots' attorneys' fees were paid by the corporate treasury. The Kreischers argue that an award of attorneys' fees thus is "essential to equity" under Rolax.

Rolax stated that attorneys' fees were appropriate in exceptional cases involving discriminatory and oppressive conduct. See id. at 481. Here, both the district court and this court found that the Poulnots did not engage in discrimination, fraud, or oppression. The Kreischers'

9

argument under the "essential to equity" exception, therefore, is without merit.

4.

Next, the Kreischers argue that the district court should have awarded attorneys' fees under § 33-14-310(d). Section 33-14-310(d) provides:

> (d) In any action filed by a shareholder to dissolve a corporation on the grounds enumerated in Section 33-14-300, the court may make such order or grant such relief, other than dissolution, as in its discretion is appropriate, including, without limitation, an order:
>
> (1) canceling or altering any provision contained in the articles of incorporation, or any amendment to the articles, or in the bylaws of the corporation;
>
> (2) canceling, altering, or enjoining any act or resolution of the corporation;
>
> (3) directing or prohibiting any act of the corporation or of shareholders, directors, officers, or other persons party to the action; or
>
> (4) providing for the purchase at their fair value of shares of any shareholder, either by the corporation or by other shareholders.
>
> (e) The relief authorized in subsection (d) may be granted as an alternative to a decree of dissolution or may be granted whenever the circumstances of the case are such that the relief, but not dissolution, is appropriate.

S.C. Code Ann. § 33-14-310(d) (Law. Co-op. 1990) (emphasis added).

The Kreischers argue that § 33-14-310(d) authorizes the district court, in its discretion, to award attorneys' fees to a prevailing party.

10

South Carolina has several statutes that expressly recognize the possibility of an attorneys' fees award. See, e.g. , S.C. Code Ann. § 31-21-140(B) (Law. Co-op. 1990) (stating that the "court may grant as relief, as it considers appropriate, any permanent or temporary injunction . . . together with court costs and reasonable attorney's fees"). The South Carolina legislature explicitly would have listed attorneys' fees in § 33-14-310(d) if the statute were designed to provide for such an award. Not having done so, the legislature does not appear to have intended to permit the awarding of attorneys' fees under that section of the South Carolina Code. This interpretation finds support in that, as the Kreischers concede, no court ever has awarded attorneys' fees based on § 33-14-310(d). Even if fees were recoverable under § 33-14-310(d), the district court acted within its discretion in denying attorneys' fees, given its findings that the Poulnots did not engage in fraud or oppression.

B.

The Poulnots' cross-appeal challenges the district court's holding that the Poulnots were liable for postjudgment interest on the remaining ten shares from January 29, 1997. Federal law provides that "[s]uch interest shall be calculated from the date of the entry of judgment." 28 U.S.C. § 1961 (West 1994). The district court did not enter judgment on the ten shares at issue until June 10, 1999.

The Poulnots argue that they are not liable for interest on the shares until June 10, 1999. In response, the Kreischers argue that charging interest from 1999 rather than 1997 would be inequitable because it would "minimize and reduce their recovery further." (Reply Br. at 13.) The Kreischers cite no authority in support of their position.

The Supreme Court analyzed the issue of postjudgment interest in Kaiser Aluminum & Chemical Corporation v. Bonjorno , 494 U.S. 827 (1990). In that case, the district court entered a judgment in favor of the plaintiffs on August 22, 1979, following a jury trial. See id. at 830. However, the court vacated the jury's damages award due to insufficient evidence, and ordered a new trial on damages. The plaintiffs received a second damages award on December 4, 1981. See id. The plaintiffs argued that the district court should have calculated post-

11

judgment interest from 1979 rather than 1981. The Supreme Court disagreed:

> "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss of the time between the ascertainment of the damage and the payment by the defendant." Where the judgment on damages was not supported by the evidence, the damages have not been "ascertained" in any meaningful way.

Id. at 835-36 (citation omitted) (alteration in original) (quoting Poleto v. Consolidated Rail Corp., 826 F.2d 1270, 1280 (3d Cir. 1987)).

In the instant case, the district court did not enter a final judgment forcing the Poulnots to purchase the ten shares until June 10, 1999. The Kreischers thus could not have ascertained, with certainty, the amount that they were going to receive for those shares until that date. Therefore, postjudgment interest began to accrue on June 10, 1999. Interest should have been calculated from June 10, 1999, rather than January 29, 1997.

III.

Based on the foregoing, we affirm the district court's denial of attorneys' fees, and remand the district court's calculation of post-judgment interest to permit a calculation of that interest in accordance with the principles set forth in this opinion.

AFFIRMED IN PART AND REMANDED IN PART

12