**LTC Oliver Donovan ULMET, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 470–85C.**

United States Claims Court.

July 25, 1986.

John D. Grad, Alexandria, Va., for plaintiff.

Sylvia Ford Brown, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, Dept. of Justice, Lt. Col. Joyce E. Peters and Major Thomas R. Folk, Office of the Judge Advocate General, of counsel.

OPINION ON DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

Title 10 U.S.C. § 1163(d), provides that—

A member of a reserve component who is on active duty and is within 2 years of

becoming eligible for retired pay * * * may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary.

The question presented is whether or not a member of a reserve component of the Army for 15 years, who was involuntarily released in 1973 and received $15,000 in readjustment pay, may qualify for the benefits of this statute by adding to his prior active duty service his subsequent intermittent training tours of duty as a non-active reservist.

### Statement

The pertinent undisputed facts are as follows:

Plaintiff entered active duty as an enlisted person on June 6, 1958. He was released from active duty involuntarily on September 12, 1973, as part of a reduction in strength pursuant to Army Regulation 635–100 and 10 U.S.C. § 681(a). At the time of his involuntary release, plaintiff had accrued 15 years, 3 months and 7 days of active service. He was eligible for and received $15,000 of severance or readjustment pay pursuant to 10 U.S.C. § 687 (1970) [now at 10 U.S.C. § 1174 (1982)] for transition to a civilian career. Following his release from active duty, plaintiff participated in a total of 15 periods of active duty for training from 1973 to 1985. Plaintiff claims that such active duty for training, when added to his prior 15 years, gives him a total of 18 years, 1 month and 20 days of active duty,[1] and, pursuant to § 1163(d), entitles him to remain in military service until he has reached 20 years of active duty service so that he may qualify for retirement under 10 U.S.C. § 3911. He seeks back pay, reinstatement to active

duty status and active duty credit towards retirement from September 30, 1983.

Active duty for training (ADT) is a tour of duty used for training members of the reserve components to provide trained units and pretrained individuals to fill the needs of the Armed Forces in times of war or national emergency and such other times as the national security requires. ADT generally is under orders that provide for automatic return to non-active duty status when the period of training is completed. ADT includes annual training tours, special tours of active duty for training, school tours and the initial tour performed by non-prior service enlistees.

### Discussion

The legislative history of § 1163(d) is highly persuasive that the term "active duty" in that section does not include the periodic or intermittent active duty for training purposes by a reserve officer who has been released from active duty generally and, apart from the training tours of duty, is in civilian life.

Section 1163(d) was originally enacted in 1956 as part of legislation entitled "An Act to provide a lump sum readjustment payment for members of the reserve components who are involuntarily released from active duty." (Act of July 9, 1956, ch. 534, 70 Stat. 517.) It added a new § 265 to the Armed Forces Reserve Act of 1952, which stated in pertinent part:

> Sec. 265(a) A member of a reserve component who is involuntarily released from active duty after the enactment of this section and after having completed immediately prior to such release at least 5 years of continuous active duty, except for breaks in service of not more than 30 days, as either an officer, warrant officer, or enlisted person, is entitled to a

---

1. Defendant asserts that the total is no more than 18 years and 8 days and that even this may be excessive. In view of the decision herein, the differences are immaterial.

   In a footnote to his cross-motion, plaintiff also asserts that there is some dispute as to whether *some* of the tours of duty were properly

classified by the Army as ADT, but plaintiff neither explains the nature of the dispute nor supports his assertion by affidavit. In any event, this would be immaterial, as the Army's records, supported by affidavit, show 15 separate tours of duty, 12 of which were for periods of 22 days or less.

lump sum readjustment payment computed on the basis of one-half of one month's basic pay in the grade in which he is serving at the time of release from active duty for each year of active service ending at the close of the eighteenth year. * * *

(b) The following persons are not entitled to any payment under this section:

\* \* \* \* \* \*

(2) A person who is released from active duty for training.

\* \* \* \* \* \*

(d) Under regulations described by the appropriate Secretary, which regulations shall be as uniform as practicable, a member of a reserve component who is on active duty and is within two years of qualifying for retired pay, retirement pay, or retainer pay under any purely military retirement system, shall not be involuntarily separated from that duty before he qualifies for that pay unless his separation is approved by the appropriate Secretary.[2]

The purpose of this legislation was explained in the report of the Senate Committee on Armed Services (S. Rep. 2288, 84th Cong. 2d Sess., *reprinted in* 1956 U.S. Code Cong. & Admin. News 3061):

The bill has a dual purpose: (1) to provide a readjustment payment to reservists who, after having served continuously on active duty for long periods of time, are involuntarily released at an age in which their usefulness to the Armed Forces is less than that of younger officers who are needed for current and future service, and (2) to induce reserve officers, by providing some measure of economic security to remain voluntarily in the active service and thereby to reduce expensive personnel turnover and to increase the effectiveness of the Armed Services through the retention of competent and experienced officers.

The report explained the reason why Congress limited the readjustment pay to those having no more than 18 years of service as follows (*id.*, 3062–64):

After 18 years of active duty, a reservist has reasonable assurance of qualifying for the immediate retirement compensation that is authorized after 20 years of active duty. Up to the point of 18 years of active service, reservists need protection against economic dislocation during the critical earning period of their lives. So long as our national policy requires reservists on active duty to augment the regular forces, some compensation to these reservists in readjusting to civilian life seems a justifiable element of the cost of national defense. * * * Capable Reserve officers, in the knowledge that they will be eligible for readjustment pay if involuntarily released, should have an increased feeling of security and should be more likely to remain on active duty for extended periods.

and

The bill provides that reservists who are within 2 years of qualifying for retirement compensation * * * shall not be involuntarily released from active duty until they qualify for retirement unless the release is approved by the Secretary of the military department concerned.

The report also reiterated that "Persons released from active duty for training" would not be entitled to readjustment pay.

Since the readjustment pay provision for those having less than 18 years of continuous active duty and the "sanctuary" provision for those having less than 2 years to go until full retirement are both a part of the same section and have a similar purpose, namely, to provide additional security and compensation to reservists who are involuntarily returned to civilian life after long periods of active duty, it seems evident that the restrictions in § 265 are applicable to both provisions. The statute ex-

---

**2.** In the codification of general military law, subsections 265(a) and (b) are now contained in 10 U.S.C. § 1174(c), (d), and (e), while subsection 265(d) is now contained in 10 U.S.C. 1163(d).

plicitly recognizes this by excluding a person who is released from active duty for training from any payment "under this section." To qualify under § 265, immediately prior to his release the reserve officer must have been engaged in "continuous active duty, except for breaks in service of not more than 30 days." A person, who after being released from active duty, returns to civilian life and receives a readjustment payment, and then periodically is called for relatively short periods of training duty may not claim credit for the intermittent duty toward 20 year retirement because it is not continuous active duty immediately prior to his release. Moreover, insofar as both readjustment payment and the sanctuary apply only to persons who are subject to involuntary release, it cannot logically be applied to one who is released upon completion of a tour of active duty for training purposes. Such a tour generally has a limited period and its termination date is specified in the order for such training duty. There is no involuntary separation.

It is also evident from the 1956 legislation that the readjustment pay provision and the sanctuary provision are alternatives rather than cumulative. If a reserve officer obtains readjustment pay upon his involuntary release from active duty to civilian life, he should not be able to use his temporary training tours to tack on additional sanctuary and resulting retirement benefits on the theory that he was not actually released from active duty and did not receive the readjustment payment but was hypothetically retained continuously on active duty until he reached 18 years of service.

It should be noted also that Congress has expressly provided an additional retirement system for persons who are members of the reserve who are not able to qualify for retirement under the general statute, and for this purpose gives them points credit not only for active duty but also for temporary training duty, length of membership in reserve components, drills and instruction. 10 U.S.C. §§ 1331–32. This is of course less favorable than the benefit which plaintiff seeks, namely, full retirement credit after 20 years of active duty. 10 U.S.C. § 3911.

The question at issue here has previously been decided by two district courts which reached the same conclusion as that herein. *Steenson v. Marsh,* 609 F.Supp. 800 (N.D. Ala.1985); *Adams v. United States,* Civ. Action No. DC 3729 (D.Kan. Aug. 23, 1973) (published in an appendix to *Steenson v. Marsh*). The plaintiffs in *Steenson* and *Adams* were reserve officers who had served on active duty, were given readjustment pay under 10 U.S.C. § 1174 and later served on active duty for training tours for predetermined periods of time. They contended that since their original period of active duty plus later periods of active duty exceeded 18 years total active federal service, they were entitled to sanctuary under 10 U.S.C. § 1163(d). The district courts rejected these contentions. Both courts concluded that Congress did not intend for reservists on ADT to take advantage of 10 U.S.C. 1163(d), particularly if they had previously received readjustment pay. As the court stated in *Adams* (*see* 609 F.Supp. at 806):

> Construing the readjustment pay statute with § 1163(d) and keeping in mind the purpose of this legislation, we are satisfied that Congress never intended that a reserve officer who had already been involuntarily released and received readjustment pay could then "tack on" active duty for training time and become qualified for the "sanctuary" afforded by § 1163(d). Plaintiffs, as career officers, have already had the benefits of readjustment pay for having been separated through no fault of their own prior to eighteen years of active duty. In our view, they have been accorded the only benefits Congress intended by this legislation.

For the foregoing reasons, defendant's motion for summary judgment is allowed and plaintiff's cross-motion is denied. The clerk is directed to dismiss the complaint.