**LTC Oliver Donovan ULMET, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 470–85C.

United States Claims Court.

Feb. 22, 1990.

---

6. Plaintiff's refund claim had been transferred

from Texas to California at plaintiff's request.

John W. Toothman, Alexandria, Va., for plaintiff.

John S. Groat, Washington, D.C., atty. of record, with whom was Stuart M. Gerson, Asst. Atty. Gen., and David M. Cohen, Director, for defendant.

## ORDER

HORN, Judge.

This case, which has a long and overly tortured history, once again appears to be ready for disposition at the trial level.[1] To be sure, the parties have carefully preserved their respective rights to appeal this court's decision to the United States Court of Appeals for the Federal Circuit, and indeed such is their right. Nonetheless, this is a case in which the lawyers and bureaucrats perhaps should step back and take a moment to consider that at the center of all the legal maneuverings and bureaucratic calculations, the plaintiff still waits for a final resolution of his claims. Part of the delay is certainly due to the overburdened bureaucracy and judiciary and the fact that all cases filed with the court and pending in the bureaucracy need to be handled as expeditiously as possible, but largely in chronological order of ripeness for attention and decision. Yet, in this case there also is clearly evident a hardening of positions by the parties, accusations of bad faith, gamesmanship, and in general an inability of the parties to deal with one another in a comfortable manner.[2]

The relationship deteriorated to the point that plaintiff's attorney felt that it was appropriate to file a Motion for Sanctions for Discovery Default, filed in response to the defendant's Motion for a Protective Order, dated November 16, 1988, and plaintiff also filed a Motion for Sanctions and for Order to Show Cause Why the Army

---

1. The intricate history of Judge Miller's original decision in this case at the trial level, *Ulmet v. United States*, 10 Cl.Ct. 522 (1986), the reversal and remand to this court by the United States Court of Appeals for the Federal Circuit, *Ulmet v. United States*, 822 F.2d 1079 (Fed.Cir.1987), the fact that the Chief Judge of the United States Claims Court vacated Judge Miller's original decision in an Order issued on September 23, 1987, as well as the numerous requests for extensions of time by both parties, combined with an inability of the parties to work together in this case once it was remanded to this court, is more fully explained in this court's Opinion dated July 25, 1989, *Ulmet v. United States*, 17 Cl.Ct. 679 (1989). In that decision, this court denied defendant's Motion to Dismiss and granted, in part plaintiff's requested relief. Only the procedural history directly related to setting the appropriate quantum for damages, which occurred following the issuance of the court's July 25, 1989 Opinion, is set out below.

2. The court would note, however, that when pressed about the need for immediate medical care for plaintiff's wife, counsel for the defendant did work with his client, the Department of the Army, to try to arrange for the availability of immediate, medical benefits.

Should Not be Held in Contempt on August 25, 1988, as part of his opposition to the defendant's Motion to Dismiss. In the second motion for sanctions, plaintiff's counsel argued that the Motion to Dismiss, filed by the defendant's counsel on August 2, 1988, late in the case, constituted an act of bad faith. Defendant filed its Reply to Plaintiff's Response and Motion for Sanctions and to Show Cause on September 15, 1989.[3]

From early in the case, this court has felt that, although the issues of law presented in the case could be resolved by the court, and the court attempted to do so in the Opinion issued on July 25, 1989, unless the damages calculations were arrived at through negotiations between the parties, this case would never be resolved with any finality and the parties would continue to bicker about the exact dollars, or formula to compute such dollars, to be included in LTC Ulmet's pension and benefits package. Therefore, in this court's July 25, 1989, Opinion, the court ordered as follows:

(a) Plaintiff is entitled to the correction of his military records to reflect active duty from September 30, 1983 to October 31, 1985, and is entitled to back payment for that period of time, including basic pay, basic allowance for quarters at the with dependents rate, basic allowance for subsistence, the variable housing allowance, and annual leave pay, all at appropriate rates applicable to the location where the plaintiff was assigned to duty prior to his improper release.

(b) Plaintiff is entitled to receive back retirement pay beginning the first day of plaintiff's constructive retirement, November 1, 1985.

(c) The plaintiff is entitled to be reimbursed for medical expenditures associated with medical services performed for the plaintiff, himself, during the constructive, active duty period. The plaintiff is not entitled to direct reimbursement from the defendant for all medical expenses associated with his spouse and dependents. The court also orders the defendant to process through the CHAM-PUS insurance service and reimburse the plaintiff for medical expenses associated with the medical bills attached to his April 26, 1988 filing, as well as for those bills for which the plaintiff serves copies upon the defendant within ten days of the issuance of this opinion, which are properly subject to reimbursement under applicable statutes, regulations and guidelines.

(d) The defendant may not set off the plaintiff's civilian earnings, which he received during the period of constructive, active duty, from the award outlined in (a), (b) and (c) above, unless such earnings were received for work inconsistent with plaintiff's military service under applicable statutes and regulations.

(e) The defendant may set off against the gross award described in (a), (b) and (c):

(i) plaintiff's retired pay earnings received during his constructive retirement while performing active duty service.

(ii) $11,250.00, 75% of the $15,000.00 separation pay received by the plaintiff at the time of his involuntary release from the Army in 1973;

(iii) any other debts the plaintiff owes to the defendant for government entitlement or benefits received by the plaintiff which, upon his constructive reinstatement to active duty and retirement, he would be required to reimburse the defendant, including the type of debts discussed by the Claims court in *Laningham v. United States*, 5 Cl.Ct. 146, 157 (1984);

(iv) all applicable federal income taxes required to be withheld on the gross recovered amount.

*Ulmet v. United States*, 17 Cl.Ct. 679, 710 (1989).

The court also ordered that plaintiff is entitled to a judgment amount, which, when calculated, will reflect the net items of (a) through (e) above. *Id.* In order to fully dispose of the case, the court required the parties to submit numerous items.

---

**3.** The first Motion for Sanctions ultimately became moot and the second Motion for Sanc-

tions has been dismissed, as is discussed more fully in a separate Order issued by the court.

First, since a calculation would be required from the Department of the Army to help determine the precise amounts to which the plaintiff is entitled, the court issued a "Call" to the defendant, addressed to the Secretary of the Army, pursuant to 28 U.S.C. § 2507(a)(1982), and Rule 34(d)(1)(B) of the Rules of the United States Claims Court, to make the appropriate computations in schedule form and to file the schedule with the court, on or before the expiration of 30 days from the issuance date of the Opinion. *Id.* Second, within 15 days after the Clerk of the United States Claims Court had served notice of the filing of the computed schedule, each party was to file with the court its acceptance or rejection of the computation. Any objection(s) were to be accompanied by a specific statement, including the reasons for the rejection, along with the appropriate authoritative support. *Id.* The court then noted that following the aforementioned submission, the court would issue an order requesting the clerk to enter judgment in favor of the plaintiff for a specific, net dollar amount. *Id.* at 710–11.

Subsequent to the issuance of the court's Opinion on July 25, 1989, the following events occurred. On July 26, 1989, plaintiff finally submitted a response to an Army calculation, which had been submitted by the Army on April 26, 1988, in response to the court's April 4, 1988 Order, which had requested information on LTC Ulmet's official retirement date and the formula defendant proposed to use to calculate plaintiff's entitlements to retirement and/or back pay. Plaintiff's response included the following objections: (1) The Army cannot retroactively retire LTC Ulmet effective October 31, 1985 and that calculations based thereon are not accurate; (2) the calculation of retirement pay is low because it fails to give LTC Ulmet credit for additional service time beyond October 31, 1985; (3) the Army should only recoup 75% of LTC Ulmet's $15,000.00 severance pay rather than 100% thereof; (4) LTC Ulmet is entitled to 62.5 days of leave for over 2 years of active duty, not 38 days as the Army suggests; (5) the Army's submission includes a deduction for active duty

and allowances for a 12–day tour during October and November of 1986, however, since LTC Ulmet would have been retired by this time, plaintiff argues that he is entitled to receive the higher active duty pay rather than his retirement pay.

On August 8, 1989, defendant submitted a Motion for Reconsideration. After a status conference, held on August 9, 1989, the aforementioned motion was endorsed as moot by the Judge. On August 23, 1989, the Department of the Army, Office of the Assistant Secretary filed its response to the court's "Call" for information, pursuant to 28 U.S.C. § 2507(a), issued together with its July 25, 1989 Opinion. This response adopted the computations submitted by the United States Army Finance and Accounting Center on April 26, 1988, but changed some of the Army's numbers to conform to the formula for relief ordered by the court in its Opinion dated July 25, 1989. In order to accommodate the schedule of plaintiff's attorney, the court extended the time in which the parties had to respond to the Army's submission in response to the Call, and on August 31, 1989, the court set a status conference for September 18, 1989.

On September 5, 1989, the plaintiff submitted his Response to the Army's Response to "Call". Without waiving any objections or conceding that which had been objected to previously, the plaintiff indicated that "[t]he calculations by the Army correctly reflect what the Army was ordered to calculate." LTC Ulmet also requested "[t]hat judgment be entered on this amount as soon as possible and that his records be corrected forthwith, so that he may immediately begin to receive his prospective pay benefits." Subsequently, on September 8, 1989, the defendant submitted its Statement of Exceptions To The Department of The Army's Response to The "Call", wherein the government indicated that the defendant has no exceptions to the Department of the Army's response to the court's "Call". Also on September 8, 1989, the plaintiff, for the first time, filed a one paragraph Motion to Supplement Relief to Include Interest on Judg-

ment, from the date of the issuance of the decision by the Federal Circuit, *Ulmet v. United States*, 822 F.2d 1079 (Fed.Cir. 1987).

On September 18, 1989, a status conference was held pursuant to an order issued by the court on August 31, 1989. At the status conference, despite their earlier submissions, the parties continued to disagree regarding the legal entitlement and monetary calculations of the following items: back pay and retirement together with Survivor Benefit Plan entitlement; Virginia unemployment deduction; interest; and the retoractivity of CHAMPUS eligibility. After the status conference, the plaintiff, on September 22, 1989, submitted his Motion to Withdraw in Part and Clarify in Part his Motions for Sanctions.

On October 3, 1989, the defendant submitted its Motion for Entry of Judgment as to Quantum. On October 13, 1989, a new attorney for the defendant entered his Notice of Appearance in the case, due to the serious illness of the defendant's original counsel. (The original counsel for the defendant reentered the case on November 2, 1989.) On the same day, October 13, 1989, plaintiff filed its Response To Defendant's Motion for Entry of Judgment as to Quantum, in which the plaintiff takes issue with the numbers submitted by the defendant in its Motions for Entry of Judgment as to Quantum. On October 16, 1989, the defendant filed its unopposed motion for an enlargement of 45 days to respond to plaintiff's Response to Motion for Entry of Judgment as to Quantum.

On October 19, 1989, another status conference was held in an effort, once again, to finalize any outstanding computations, as well as to discuss any other outstanding matters before the court, related to this case. At the status conference, with counsel for both parties present, the court and the parties proceeded through a step by step analysis of each item for which compensation had been allowed by this court's Opinion dated July 25, 1989, *Ulmet v. United States*, 17 Cl.Ct. 679, 709–10 (1989), in an attempt to arrive at an exact dollar amount to which the plaintiff is entitled.

After addressing each separate item of compensation, and based upon the parties representations in open court, the court determined that the document submitted to it at this conference finally represented a written formulation of numbers which were accurate and had been agreed to by both parties. Prior to this date, counsel for the plaintiff had consistently maintained, at status conferences and in written submissions, that he did not agree with the defendant's counsel as to the method of calculation of several of the submitted items. Undoubtedly, part of the difficulty in arriving at agreed to numbers was the semantic wrangling that counsel continued to engage in, despite their periodic oral insistence that they were in agreement, and their inability, up to this point, to finalize or agree to either one document or two separate documents including the same entries, even if the numbers disagreed, which the court could use to frame the differences between the parties for the purpose of entering a final judgment. At the conference on October 19, 1989, the court also verified with the parties that a determination as to the appropriateness of the sanctions requested by plaintiff's counsel against defendant and defendant's counsel and whether the judgment should include interest remained the only outstanding issues in the case.

On October 25, 1989, the plaintiff indicated that he intended to withdraw his pending Motion For Sanctions or to Hold the Defendant in Contempt of Court. On October 30, 1989, the defendant filed a Reply to Response to the Motion for Entry of Judgment as to Quantum. On November 3, 1989, the court received the plaintiff's Surreply To Defendant's Reply On The Motion for Entry of Judgment as to Quantum, which once again addressed the issue of interest.

Finally, indeed, all that remains for this court to do is to address the issue of interest and to make a determination as to the net value of LTC Ulmet's award.

## DISCUSSION

After a protracted history, this court is, at last, in a position to enter a final judg-

**532**

ment in this case. Only one issue remains for determination, namely, whether or not the plaintiff, as the prevailing party, is entitled to recover interest, and, if so, from which date.[4] Several dates have been proposed for consideration. The plaintiff seeks to recover interest, pursuant to 28 U.S.C. § 1961(c)(2) (1982), from the date of the entry of the judgment of the decision by the Court of Appeals for the Federal Circuit, when it reversed Judge Miller's original trial court decision and remanded the case back to the United States Claims Court. Defendant, however, maintains that no interest should accrue until this court enters the final judgment included in today's Order.

■ To prevail, plaintiff must overcome "the ancient doctrine disallowing [recovery of] interest against the government in the absence of *express* statute or contractual provision." *Jetco, Inc. v. United States*, 11 Cl.Ct. 837, 850 (1987) (emphasis in original and citing *The Singer Co., Librascope Division v. United States*, 215 Ct.Cl. 281, 284, 568 F.2d 695, 698 (1977); *See also Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), *United States ex rel. Angarcia v. Bayard*, 127 U.S. 251, 260, 8 S.Ct. 1156, 1160, 32 L.Ed. 159 (1888); *Fors v. United States*, 14 Cl.Ct. 709, 713–14 (1988); *Entwistle Co. v. United States*, 6 Cl.Ct. 281 (1984)). Stated differently, "[t]he sovereign's consent to be sued cannot be implied but must be unequivocally expressed." *Zumerling v. Marsh*, 783 F.2d 1032, 1034 (Fed.Cir.1986) (citing *Kania v. United States*, 650 F.2d 264, 269, 227 Ct.Cl. 458,

*cert. denied*, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); *see also United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Thayer West Point Hotel*, 329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521 (1947)). Therefore, "[a]n allowance of interest on a claim against the United States, absent constitutional requirements, requires an *explicit* waiver of sovereign immunity by Congress". *Id.* (emphasis in the original). Waivers of sovereign immunity must be strictly construed. *See United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Express consent to the payment of interest must be found in either a special statute or an express contractual provision. *United States v. New York Rayon Importing Co.*, 329 U.S. 654, 659, 67 S.Ct. 601, 603, 91 L.Ed. 577 (1947). *Zumerling v. United States*, at 1034. The intent by Congress to permit the recovery of interest cannot be implied. *Id.* As stated in *Library of Congress v. Shaw*, *supra* 478 U.S. at 315, 106 S.Ct. at 2962, "[i]nterest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress."

■ The legal rule that the United States is liable for interest on judgments of the United States Claims Court only by express provision is codified at 28 U.S.C. § 2516(a) (1982).[5] Plaintiff has failed to cite or distinguish this statute, but rather states in his Motion to Supplement Relief to Include Interest on Judgment, "[c]ounsel for LTC Ulmet has learned that 28 U.S.C. Section 1961(c)(2) provides for interest against the United States in this action."[6]

---

4. Plaintiff's request for interest was added to the claim late in the case, on September 8, 1989, in a Motion filed to supplement relief to include interest on the judgment.

5. § 2516 Interest on Claims and Judgments
  (a) Interest on a claim against the United States shall be allowed in a judgment of the United States Claims Court only under a contract or Act of Congress expressly providing for payment thereof.

6. § 1961. Interest
  (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of

the State in which such court is held, execution may be levied for interest on judgements recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
  (b) Interest shall be computed daily to the date of payment except as provided in section

Plaintiff's argument on the issue of interest is flawed in several respects. First, plaintiff's analysis of 28 U.S.C. § 1961(c)(2)(1982) fails to give weight to each word and reference in the statute, and, superficially, opts to interpret the statute; second, the plaintiff's interpretation of the legislative history surrounding 28 U.S.C. § 1961(c)(2)(1982) is incorrect; third, in plaintiff's attempt to fit within his own interpretation of 28 U.S.C. § 1961(c)(2)(1982), he incorrectly suggests that a "final judgment" has been rendered in this case prior to the issuance of today's Order; and fourth, plaintiff fails to acknowledge 28 U.S.C. § 2516(a)(1982), the code section which is in fact applicable to the case at bar on the issue of allowable interest.

It is well settled that "the starting point in every case involving construction of a statute is the language itself." *Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981), (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975)). It also must be assumed that the ordinary meaning of that language accurately expresses the legislative purpose. *Park'N Fly v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). *See also, United States v. Albertini*, 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). Otherwise stated, "it is well-recognized that the goal of statutory interpretation is to effectuate as nearly as possible the will of the legislature." *New Mexico v. United States*, 831 F.2d 265, 267 (Fed.Cir.1987), (citing *HCSC–Laundry v. United States*, 450 U.S. 1, 6–8, 101 S.Ct. 836, 838–40, 67 L.Ed.2d 1 (1981), *Central Tablet Mfg. v. United States*, 417 U.S. 673, 689–91, 94

S.Ct. 2516, 2525–26, 41 L.Ed.2d 398 (1974); *United States v. American Trucking Associations Inc.*, 310 U.S. 534, 543–50, 60 S.Ct. 1059, 1063–67, 84 L.Ed. 1845 (1940)). Therefore, "absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Ulmet v. United States*, 822 F.2d 1079, 1082 (Fed.Cir.1987), (citing *Consumer Products Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *see also Institut Pasteur v. United States*, 814 F.2d 624, 626–27 (Fed.Cir.1987)).

Addressing each of the flaws in plaintiff's argument, in the first place, plaintiff's reliance on 28 U.S.C. § 1961(c)(2)(1982) is misplaced. It is a basic rule of statutory construction that, where possible, effect should be given to every word and clause of a statute. *See* Sutherland, *Statutory Construction* § 46.05(1984). The construction urged by plaintiff's counsel is incorrect due to the fact that the plaintiff's analysis of the code section is far too simplistic and fails to analyze each word and reference in the statute.

Section 1961(c)(2) of 28 U.S.C. reads:

(c)(2) Except as otherwise provided in paragraph (1) of this subsection, interest shall be allowed on all final judgments against the United States in the United States Court of Appeals for the Federal Circuit, at the rate provided in subsection (a) and *as provided in subsection (b)*.

28 U.S.C. § 1961(c)(2)(1982) (Emphasis added).

Plaintiff's very brief submissions on the issue of interest merely recite the code

2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.

(c)(1) This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at the underpayment rate or overpayment rate (whichever is appropriate) established under section 6621 of the Internal Revenue Code of 1954 [26 U.S.C.A. § 6621].

(2) Except as otherwise provided in paragraph (1) of this subsection, interest shall be allowed on all final judgments against the

United States in the United States Court of Appeals for the Federal circuit, at the rate provided in subsection (a) and as provided in subsection (b).

(3) Interest shall be allowed, computed, and paid on judgments of the United States Claims Court only as provided in paragraph (1) of this subsection or in any other provision of law.

(4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

section, and stop short of a careful and thorough analysis. Fully analyzing 28 U.S.C. § 1961(c)(2) requires reference back to subsection (b), which states:

> (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304 of title 31, and shall be compounded annually.[7]

28 U.S.C. § 1961(b)(1982).

Moreover, in order to understand 28 U.S.C. § 1961(c)(2), as expanded on by 28 U.S.C. § 1961(b), inquiry also is required into Title 31 § 1304 of the United States Code, which provides in relevant part as follows:

> (b)(1) Interest may be paid from the appropriation made by this section....
>
> (A) On a judgment of a district court, only when the judgment becomes final after review on appeal or petition by the United States Government, and then only from the date of filing of the transcript of the judgment with the Comptroller General through the day before the date of the mandate of affirmance; or
>
> (B) On a judgment of the Court of Appeals for the Federal Circuit or the United States Claims court under section 2516(b) of title 28, only from the date of filing of the transcript of the judgment with the Comptroller General through the day before the date of the mandate of affirmance.

31 U.S.C. § 1304(b)(1982).

The concept that interest is permitted only on a final *judgment* by the United States Court of Appeals for the Federal Circuit or on a final *judgment* of the United States Claims Court is reinforced by each of the above sections of statute.

Even assuming that plaintiff's reliance on 28 U.S.C. § 1961(c)(2) is correct, by its express language, section 1961(c)(2) of Title 28 of the United States Code requires that a "final judgment" must be rendered by

the Federal Circuit before interest is to be allowed against the United States. It would appear, therefore, that for LTC Ulmet to be eligible for interest, a "final judgment" has to have been issued in his case, which conclusively disposes of the case. Otherwise stated, LTC Ulmet's eligibility for interest depends upon whether or not any of the decisions rendered in this case, prior to the Order issued today, amounts to a "final judgment".

"Final judgment" means "one which finally disposes of rights of parties, either upon entire controversy or upon some definite and separate branch thereof." Black's Law Dictionary 567 (5th ed. 1979). A "[j]udgment is considered final only if it determines the rights of the parties and disposes of all of the issues involved so that no further action by the court will be necessary in order to settle and determine the entire controversy." *Id.*

In the instant case, there are four possible junctures at which a "final judgment" could have been rendered. First, at the conclusion of Judge Miller's opinion in *Ulmet v. United States,* 10 Cl.Ct. 522 (1986); second, at the conclusion of the appeal before the United States Court of Appeals for the Federal Circuit in *Ulmet v. United States,* 822 F.2d 1079 (Fed.Cir.1989); third, upon the issuance of this court's opinion, on July 25, 1989, in *Ulmet v. United States,* 17 Cl.Ct. 679 (1989); or fourth, upon the issuance of today's Order, which, for the first time, attempts to determine the exact dollar figure to which this plaintiff is entitled.

While at one time the first decision by Judge Miller in *Ulmet v. United States,* 10 Cl.Ct. 522 (1986) might have been considered a "final judgment," because it was clearly reversed by the appellate court and then vacated by Chief Judge Smith on September 23, 1987, it can no longer stand as a final decision.[8] Moreover, since in *Ulmet*

---

**7.** 28 U.S.C. § 2516(b) (1982) concentrates on the rate of interest payable on a judgment against the United States, not on entitlement to interest.

**8.** According to Black's Law Dictionary, vacate means to annul; to set aside; to cancel or rescind. To render an act void; as to vacate an entry of record, or a judgment. As applied to a judgment or decree it is not synonymous with "suspend" which means to stay enforcement of judgment or decree. Black's Law Dictionary 1388 (5th ed. 1979).

*v. United States*, 10 Cl.Ct. 522 (1986), Judge Miller allowed the defendant's Motion for Summary Judgment, denied the plaintiff's Cross–Motion, and ordered "[t]he clerk ... to dismiss the complaint." *Id.* at 525, he never issued a judgment in favor of the plaintiff for damages on which interest could begin to accrue. On appeal to the United States Court of Appeals for the Federal Circuit, the Claims Court decision was reversed on the legal issue of how to apply 10 U.S.C. § 1163(d) to the plaintiff before it, and the case was remanded back to the trial court for further proceedings consistent with the Circuit Court's opinion, without the Circuit Court addressing the measure of damages or type of benefits to which this plaintiff, LTC Ulmet, would become entitled. *Ulmet v. United States*, 822 F.2d at 1087.[9]

Plaintiff puts a great deal of weight on the decision issued by the United States Court of Appeals for the Federal Circuit in *Ulmet v. United States*, 822 F.2d 1079 (1987), as the one which, in his view, achieved "final judgment" status. This court feels compelled, to find, however, that the decision in which the Federal Circuit reversed, remanded and issued its mandate,[10] cannot be considered a "final judgment" because it did not fully and completely dispose of the case and was not susceptible to entry of a final judgment, without the need for further proceedings at the trial level.[11]

The Court of Appeals held that "[t]he time served by LTC Ulmet on active duty for training is to be included in computing the time required for sanctuary under section 1163(d) and retirement under 10 U.S.C. § 3911. Having accumulated over 18 years of active service time, LTC Ulmet is entitled to sanctuary under the terms of the statutory provision. Accordingly, the decision of the Claims Court is reversed." *Ulmet*, 822 F.2d at 1087. Thus, the Court of Appeals issued a ruling on the legal question of his qualification to receive benefits given LTC Ulmet's number of years of service. The Circuit Court, however, did not purport to issue a ruling as to quantum and did not address any of the individual benefits to which LTC Ulmet could become entitled as a result of its ruling.

Defendant cites to the following words in *Bonjorno v. Kaiser Aluminum and Chemical Corp.*, 865 F.2d 566 (3d Cir. 1989):

Little if any authority supports the position that post-judgment interest accrues from the date of an unliquidated verdict or from a judgment vacated by a district court which is never reinstated, modified or even appealed. The vast majority of cases which construe section 1961 allow interest to run from a verdict rather than a 'judgment' involve verdicts which include an assessment of damages where

---

**9.** The situation might also be different if LTC Ulmet had received an award from Judge Miller which was vacated and later reinstated or modified, in which case certain circuits have begun the accrual of interest from the date of the earlier judgment. *See Bonjorno v. Kaiser Aluminum and Chemical Corp.*, 865 F.2d 566 (3d Cir.1989), especially footnote 7.

**10.** A mandate is:

[a] precept or order issued upon the decision of an appeal or writ of error, directing action to be taken, or disposition to be made of case, by inferior court. Official mode of communicating judgment of appellate court to lower court, directing action to be taken or disposition to be made of cause by trial court.
Black's Law Dictionary 867 (5th ed. 1979).

**11.** The court is cognizant of the fact that under the proper conditions a ruling by the United States Court of Appeals for the Federal Circuit

could have been a "final judgment", however, those conditions do not exist in the case at bar. For instance, if a case was appealed to the Federal Circuit, from a final decision issued by the United States Claims Court, and the Federal Circuit reversed, remanded and in its opinion included a definite, quantifiable sum as the measure of damages, then conceivably, there would be nothing left for the Claims Court to do but to enter judgment in accordance with the Appellate Court's Opinion, and the decision and mandate of the Federal Circuit would constitute a "final judgment". Such is not the case here, because although the plaintiff's counsel contends that arriving at a specific dollar award was easy (a task that both he and defendant's counsel have for the last six months been unable to do), the Federal Circuit's mandate did not even attempt to quantify the amount of dollars, or formula necessary to arrive at that number, to which plaintiff should be entitled under the decision.

judgment is later entered on the verdict amount. *See, e.g., Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270 (3d Cir. 1987); *Turner v. Japan Lines, Ltd.*, 702 F.2d 752 (9th Cir.1983); *Givens v. Missouri–Kansas–Texas R.R. Co.*, 196 F.2d 905 (5th Cir.1952). In *Poleto*, we stated that 'the purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant.' 826 F.2d at 1280.

*Id.* at 570.

When faced with a choice of possible dates on which to start the accrual of interest, the judges in *Bonjorno* selected the date on which the jury returned its initial verdict on damages, not the date of the original liability verdict, which did not include an assessment of damages.

Based on *Bonjorno*, defendant concludes that in the absence of a final judgment for the plaintiff in a fixed amount, 28 U.S.C. § 1961(c)(2) does not permit the award of interest from the date of the mandate of the Court of Appeals. In response, plaintiff's counsel asserts that once the decision was issued by the Federal Circuit, damages in LTC Ulmet's case were easily quantifiable, although he fails to demonstrate or even discuss why this is the case.

This court is persuaded that the reasoning employed by the *Bonjorno* court is sound and should be adopted by this court. In the instant case, months and years of wrangling between the plaintiff and defendant, including the presentation of new and additional legal issues to the court for resolution, after the issuance of the Circuit Court's Opinion, and even after the issuance of this court's July 25, 1989 Opinion, clearly suggest that the issuance of the appellate court's opinion was not intended to and did not result in an easily quantifiable, assessment of damages. Following the mandate issued to this court by the Federal Circuit, the process of arriving at the correct figure, or formula necessary to arrive at such a figure, to which LTC Ulmet will be entitled has involved considera-

tion of numerous questions of law and fact and has by no means been a ministerial matter.

The next possible date which arguably could be considered as one on which a final judgment was issued was July 25, 1989, when this court issued its Opinion in *Ulmet v. United States*, 17 Cl.Ct. 679 (1989). The July 25, 1989 Opinion, however, only addressed the entitlement aspect of the case, and specifically reserved the quantum issues for further discussion and negotiation between the parties. The Opinion also required additional submissions to the court, prior to final resolution by this Judge.

This court, therefore, finds that the plaintiff in this case is not entitled to interest until today's Order on quantum has been issued and the judgment of this court becomes final. Only after the issuance of today's Order, the rights of the parties will have been determined with finality, and, indeed, subject to no further proceedings in the trial court. Only after the issuance of today's Order, no further action by the court will be necessary in order to settle and determine the entire controversy. In sum, the Claims Court Opinion of Judge Miller, subsequently reversed and vacated, the reversal of Judge Miller's Opinion, remand and mandate, issued by the Federal Circuit, and the July 25, 1989 Opinion issued by this court, all fall short of being a "final judgment" in this case. Accordingly, to date, there is no "final judgment" in the case at bar and LTC Ulmet is not entitled to prejudgment interest under section 1961(c)(2) of Title 28 of the United States Code.

The controlling section to determine the amount of interest due to LTC Ulmet is 28 U.S.C. § 1961(c)(3), which provides:

> (3) Interest shall be allowed, computed, and paid on judgments of the United States Claims Court only as provided in paragraph (1) of this subsection or in any other provision of law.

28 U.S.C. § 1961(c)(1)(1982) pertains to tax cases and is not relevant here. Moreover, the plaintiff in this case cannot rely on the "other provision of law" clause of 28 U.S.C. § 1961(c)(1)(1982), perhaps because as

plaintiff well knows no such "other provision of law" exists to cover military pay cases and no express waiver of sovereign immunity by Congress has been enacted for such cases.

Section 2516(a) of Title 28 of the United States Code provides:

(a) Interest on a claim against the United States shall be allowed in a judgment of the United States Claims Court only under a contract or Act of Congress expressly providing for payment thereof.[12]

Congress, for example, has provided for interest on claims against the United States from judgments in the Claims Court in the following areas: (1) interest is permitted on judgments entered in claimant's favor in suits for refund of federal taxes as permitted pursuant to 28 U.S.C. § 2411 (1982); (2) interest is allowed on judgments entered on contract claims pursuant to 41 U.S.C. § 611 (1982), which claims are subject to the Contract Dispute Act of 1978; (3) interest is likewise recoverable as part of reasonable and entire compensation on patent infringement and copyright claims pursuant to 28 U.S.C. § 1498 (1982); and (4) interest is also recoverable as part of just compensation pursuant to the Fifth Amendment to the United States Constitution. In the absence of an express statute or contractual provision providing for interest in military pay cases, such as the case at bar, the no-interest rule must be invoked. Thus by clear implication, interest on claims not covered by contract or clearly enacted statutory provisions is barred. No statutory provision establishing the right to interest in military pay or retirement cases exists.

Although this court finds that the statutory language at issue in this case is clear on its face, as plaintiff's counsel plainly concedes in Plaintiff's Surreply to Defendant's Reply on Motion for Entry of Judgment as to Quantum, assuming, *arguendo,* that an ambiguity could be found in the words of the statute, as enacted, resort could be had to the legislative history in order to clear up any ambiguity. Upon review of the legislative history, it appears

that during the deliberations of the Federal Court's Improvement Act of 1982, Pub.L. 97–164, 96 Stat. 25, Congress considered a proposal to allow prejudgment interest under the general federal interest statute, 28 U.S.C. § 1961. The proposal was, however, dropped from the legislation as passed. *See, also Monessen Southwestern Ry Co. v. Morgan,* 486 U.S. 330, 339, n. 8, 108 S.Ct. 1837, 1844, n. 8, 100 L.Ed.2d 349 (1988). Likewise, the history of Senator's Grassley's amendment to S. 1700, which, in relevant part, was passed and codified as 28 U.S.C. § 1961(c)(2), reveals that the intent of Congress in promulgating the section appears to have been to permit the payment of interest only on a final judgment, issued on appeal by the United States Court of Appeals for the Federal Circuit against the United States, which is not the situation in the case at bar.

During Senate debate, Senator Grassley proposed an amendment to S. 1700, which was passed and codified as 28 U.S.C. § 1961(c)(2)(1982), 127 Cong.Rec. S–29865–66 (December 8, 1981). Mr. Stockman, then Director of the Office of Management and Budget, wrote a letter to the Senate, addressed to the Hon. Robert Dole, in support of Senator Grassley's amendment, in which he addressed the present practice concerning the payment of interest in the United States Claims Court and indicated his support for the amendment which attempted to maintain the "status quo," which was originally to permit the payment of interest on a final judgment entered on appeal by the Federal Circuit. In the letter, Mr. Stockman wrote:

[W]e have special problems with respect to provisions of Section 302 as they would apply to the new United States Claims Court. First, the number of judgments subject to the payment of post-judgment interest by the Government would be substantially increased by Section 302 as drafted.

Currently, in Court of Claims cases, the Government does not pay post-judg-

---

**12.** It should be noted that 28 U.S.C. § 2516(a)(1982) is similar to 28 U.S.C. § 1961(c)(3)(1982) in that both sections require

that in order for interest to be allowed from a United States Claims Court decision such must be provided for in "any other provision of law."

ment interest during the period that the Appellate Division of the Court of Claims reviews adverse recommendations of the trial commissioners; the Federal Government only pays post-judgment interest when it appeals from a Court of Claims judgment to the Supreme Court and loses. Under the proposed new subsection (d)(2) of Section 1961 of title 28, the Government would become liable for the payment of post-judgment interest whenever it appealed an adverse judgment of the new United States Claims Court to the new Court of Appeals for the Federal Circuit and failed to prevail.

We strongly believe that the status quo should be maintained by amending Section 302 to provide that interest be paid only during the pendency of unsuccessful appeals to the Supreme Court. Cong.Rec. S–29865.

Senator Grassley indicated that the "amendment is occasioned because of strong concerns expressed by the Office of Management and Budget on behalf of the administration in the interest provisions of the committee bill." Senator Grassley's amendment, obviously took into account the concerns expressed by the Office of Management and Budget in maintaining the "status quo" when he stated:

[U]nder existing structure of the U.S. Court of Claims, determination of the trial commissioners, when appealed to the full Court of Claims, do not draw interest until a final determination is made by the Court of Claims. Under the committee bill the new U.S. Claims Court, which replaces the trial division of the existing Court of Claims, would render final judgments.

These judgments would have been subject to interest unless otherwise provided for. The second change made by this amendment accomplishes that purpose.

Thus, interest would accumulate only from the date of final judgment by the U.S. Court of Appeals for the Federal Circuit. Although the new Claims Court

would be placed in the unique position that does not apply to the judgments of the several district courts, the amendment does retain the status quo with respect to accumulation of interest on judgments of the Court of Claims.
*Id.*

It appears that the intent of Congress in promulgating what is now 28 U.S.C. § 1961(c)(2)(1982) was to permit the payment of interest only in those cases in which an adverse judgment is rendered against the government by the United States Court of Appeals for the Federal Circuit and appealed to the United States Supreme Court, unless otherwise provided for by an express waiver of sovereign immunity in a separate statute, such as is the case for tax, patent, contracts and Fifth Amendment taking cases brought in the United States Claims Court. Since, in the *Ulmet* case, the Federal Circuit issued an opinion reversing the Claims Court Opinion on the critical legal issue, and the original decision by Judge Miller, which made no award of damages, was vacated, no prior, final judgment exists in this case. Therefore, until today's Order is entered as a final judgment in the case, 28 U.S.C. § 1961(c)(2) is simply not applicable to the case at bar.[13]

The court, hereby, ORDERS that the plaintiff is not entitled to prejudgment interest in this case. After lengthy negotiations and complex calculations as agreed to by the parties, and pursuant to the findings in *Ulmet v. United States*, 17 Cl.Ct. 679, 710 (1989) the following figures represent the amounts which should be awarded to the plaintiff in the above captioned case:

1. BACK ACTIVE DUTY PAY AND
     ALLOWANCES:
     10/1/83—10/31/85 . . . . . . . . . . . . . . . . . . $109,074.24
2. GROSS BACK RETIRED PAY:
     11/1/85—8/31/89 . . . . . . . . . . . . . . . . . . . . $87,065.00
     Offset by SBP Enrollment Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $7,637.09
     (Plaintiff LTC Ulmet is to pay this
     amount to be enrolled.)
     NET BACK RETIRED PAY . . . . . . . . . $79,427.91
3. MEDICAL EXPENSES:
     (a) LTC Ulmet . . . . . . . . . . . . . . . . . . . . . . . . . . $60.00

---

**13.** This court does not have to decide if interest is payable upon an adverse decision, by the Federal Circuit, against the government, depending on whether or not the ruling is appealed to the United States Supreme Court.

(b) CHAMPUS: Record correction to reflect the enrollment of LTC Ulmet and his dependant's in "DEERS" (Defense Enrollment Eligibility Reporting System) during the appropriate time periods, (entitlement is established simultaneous with the record correction in *Ulmet v. United States,* 17 Cl.Ct. 711 (1989) as finalized in the Order issued today ...............................$0.00

4. SET-OFF FOR LTC ULMET'S CIVILIAN EARNINGS, 10/1/83—10/31/85 (This is no longer being contested).....................$0.00

5. OTHER SET-OFFS, COLLECTIONS, ADJUSTMENTS:

(a) Adjustment to LTC Ulmet's retired pay because he already received active duty pay 10/27/86—11/7/86 ................ $730.44

(b) Recoupment of 75% of LTC Ulmet's separation pay............ $11,250.00

(c) Adjustment to LTC Ulmet's back pay and allowances because he already received active duty pay for ADT during these periods ................... $8,170.68

(d) Federal income and social security tax withholdings ............. $36,905.51

(e) Virginian unemployment compensation received by LTC Ulmet has not been set-off because we have determined that he will be required to reimburse Virginia for these monies. ...........................$0.00

IT IS SO ORDERED.